# CHARLESTON.

## CARR *v.* WILSON.

*(GREEN, JUDGE, Absent.)

Submitted March 13, 1889.—Decided March 14, 1889.

1. VACANCY IN OFFICE—CONTESTED ELECTION—PRESIDENT OF SENATE—CONSTITUTIONAL LAW.

Where persons are voted for for governor at a regular election for the office of governor, but there has been no declaration of the result of the election by either the Speaker of the House of Delegates or the joint assembly of the two branches of the Legislature, and a contest for that office is pending before such joint assembly, and the declaration of the result has been by such assembly postponed until the decision of such contest, that does not create such condition of things, within the meaning of section 16, art. VII, of the constitution, as will entitle the President of the Senate to act as Governor.

2. VACANCY IN OFFICE—CONTESTED ELECTION—GOVERNOR—HOLDING OVER—CONSTITUTIONAL LAW.

In such case the governor elected for the next preceeding term has the right and is under duty, by virtue of section 6, art. IV,

*On account of illness.

of the constitution, to continue to discharge the duties of his office until a successor shall be declared elected.

3. **Vacancy in Office—Contested Election—Oath of Office —President of Senate—Constitutional Law.**

   The act of taking the official oath prescribed for governor by a candidate voted for for governor at such election, before a declaration of his election, under section 3, art. VII of the constitution, would not entitle him to take office, and his inability to take office for want of such declaration of election, whether he attempts to qualify or not, would not entitle the President of the Senate to act as Governor.

4. **Vacancy in Office — Contested Election — Governor — Declaration of Election by Legislature — Constitutional Law.**

   A declaration of election to the office of governor, as provided for by sec. 3, art, VII, of the constitution, is indispensible to perfect and consummate the title to that office.

5. **Vacancy in Office—Governor—Holding Over—President of Senate—Constitutional Law.**

   The provisions of the constitution limiting the term of office of governer to four years, and making him ineligible to re-election, do not prevent him from continuing to discharge the duties of his office after his term, under sec. 6, art. IV, of the constitution, in cases where the president of the senate can not act as governor, under section 16, art. VII, of the constitution.

Statement of the case by Judge Brannon :

Rebort S. Carr is president of the Senate. He filed his petition in this court, averring that on the 4th of March, 1889, the office of Governor of the State had become and remains vacant, and that under sec. 16, art. VII, of the constitution it is his right and duty to act as Governor ; that at the election last held for Governor Nathan Goff and A. B. Fleming were the two candidates receiving the highest number of votes for that office ; that Goff claiming to have received a greater number than Fleming, on 4th of March, 1889, took the oath of office and demanded possession of the office, but that E. Willis Wilson, a private citizen found in its possession, refused to admit Goff; that Goff asked this Court for a *mandamus* to compel Wilson to surrender the office to him, but that the Court held, that he was not entitled to the writ for reasons stated in the opinion and decision of the conrt ; and that the act of Goff in taking the oath was void and of no effect.

He further states in said petition that either Goff or Fleming was elected, but that both were and still are under such disability, as prevents their acting; that Fleming failed to qualify and for that reason and others is disabled from entering on the duties of the office; and that Goff for reasons stated in said opinion of this Court is disabled from so doing; also that he, Carr, demanded the office from Wilson and was refused admission, and he alleges in said petition, that Wilson had no right to the office. Carr asked a *mandamus* to compel Wilson to yield the possession of the office to him. By consent the petition stands as an alternative *mandamas.*

Wilson filed a return. It denies that any vacancy in the office exists, and that Carr has under the constitution any right to act as governor; and avers, that he under the constitution had the right and was under duty to continue in the discharge of the powers of the office, until his successor should be declared elected and should qualify. He admits, that said Goff and Fleming were candidates for Governor, each claiming to have received the highest number of votes. It avers, that, whether either received a majority of legal votes, or both an equal number, neither said Carr nor he could possibly know, as the returns of the election were sealed and transmitted to the Secretary of State, to be disposed of as directed by sec. 3, art. VII, of the constitution; that under the constitution said returns cannot be published, declared or made known except as by it provided; that in fact they had never been published and made known; that there is no law whereby they can be legally published except as set forth in said section 3; and therefore any averment of the petition that either Goff or Fleming had received a majority or had been elected, or did not receive an equal number of votes, is beyond the possibility of the petitioner's knowledge and therefore untrue. It avers, that neither Goff nor Fleming, nor any one else, had been declared elected, and therefore it was untrue, that either a failure to qualify or any disability or any condition of facts whatever had occurred concerning the governor which entitled Carr to act. It avers that Wilson was elected in October, 1884, governor for four years, beginning March 4, 1885, and that he was eligible to be so

elected and was declared elected and served as such governor for such term, and is still in the office performing its duties, his successor not having been declared elected and qualified, within the meaning, intent and requirement of the constitutien. It avers that Goff and Fleming were candidates for governor at the election on the Tuesday after the first Monday in November, 1888, for the term commencing March 4, 1889, and both of them and no other person claimed to have been elected. It also avers that said Fleming instituted proceedings contesting the election of said Goff before the legislature in joint assembly at its session commencing on second Wednesday in January, 1889; that the petition and notice of contest of Fleming and the counter-petition and notice of Goff were presented, received and entered on the journals of both houses of the legislature and also in the joint assembly, and that the necessary steps were taken by the joint assembly and the houses for the trial of the contest. Copies of the journal are filed with the return.

It appears therefrom, that the joint assembly adopted a resolution referring to said contest and suspending the declaration of the result as to governor until the decision of said contest; and that it was the opinion and decision of said assembly, that the mere reading of the returns already opened (those from a few counties had been opened) should not be construed to give either Goff or Fleming any claim or right to the office, and that all the returns should be referred without reading any of them not yet opened to the joint committee provided by law relating to contests for the office of governor and be considered, as if none of said returns had been read. Such a committee was appointed to examine and report on the contest between Fleming and Goff, and all returns and papers relating to it were referred to the committee. It appears also, that on the 4th January, 1889, an order was made by the Circuit Court of Kanawha suspending the delivery of the certificates of the commissioners of that county as to the election for Governor. A resolution was passed extending the time for taking depositions in the contest until — day of May, 1889. Plaintiff, Carr, demurred to the return of said Wilson. The case was fully argued, and submitted to the decision of the court.

*J. H. Ferguson* for petitioner.

*J. W. St. Clair* and *E. W. Wilson* for respondent.

BRANNON, JUDGE:

President Carr bases his claim for the office of Governor on section 16, art VII, of the constitution, which reads as follows:

"In case of the death, conviction on impeachment, failure to qualify, resignation, or other disability of the governor, the president of the senate shall act as governor until the vacancy is filled or the disability removed." Gov. Wilson denies the application of that provision to the present circumstances, and, though his term of four years as governor has expired, he claims to hold over until his successor shall be declared elected and qualified, under sec. 6, art. IV, of the constitution, which reads as follows: "All officers elected or appointed under this constitution may, unless in cases herein otherwise provided for, be removed from office for official misconduct, incompetence, neglect of duty, or gross immorality, in such manner as may be prescribed by general laws, and unless so removed they shall continue to discharge the duties of their respective offices until their successors are elected or appointed and qualified."

Carr contends that, while it is true, that under section 6, art. IV, officers hold over beyond their term, until their successors are qualified, yet that that section itself says: "unless in cases herein otherwise provided for;" and that, if we turn to said section 16, art. VII, it is therein otherwise provided for, as follows: "That in case of the death, conviction on impeachment, failure to qualify, resignation, or other disability of the governor, the president of the senate shall act as governor."

Wilson maintains, that the words, "unless in cases herein otherwise provided for," apply only to removals of officers, not to the clause providing for holding over, as if it read, "all officers may be removed in such manner, as may be prescribed by general laws, unless in cases herein otherwise provided for," or as if the clause as to officers holding over were in another section. It is said, that as to removal it was nec-

essary to insert these words, because this section gives the legislature power to provide as to the manner of effecting removals from office, whereas section 9, art. IV, provides for the impeachment of all State-officers and their trial and removal by the senate, and the insertion of those words as to removals avoids any inconsistency. Their position (not at the opening of the section but after the word "may," which is a part of the verb "remove,") and their absence from the clause relating to officers continuing in office would seem, grammatically speaking, to confine them to the clause relating to removals. To connect them, also, with the other clause, we would have to transpose them to it and make it read: "and unless so removed, or unless in cases herein otherwise provided for, they shall continue to discharge" etc., which Carr's counsel say should be done, but which the text of the section does not do. But I regard this matter not material; for, if they were not used at all, the general rule, that removals should be made, as might be prescribed by the legislature, would yield as to, or rather not apply to, those officers, who can be removed only by process of impeachment, for the legislature could not as to them prescribe another mode of removal.

And, as to the general rule that all officers shall hold over until their successors are qualified, that being a general rule would yield to a clause providing otherwise as to a particular officer, for instance, governor; as there would be as to that officer a provision applicable only to him, and as to him that particular provision would govern his particular case. Bish. Stat. Crimes, §§ 126, 390. Those words were inserted out of abundant caution and to give harmony to the face of the constitution. I do not think it material and so do not decide, whether those words relate to only one or both the sentences or clauses of said section 6. But, allow that they qualify both, it is plain, that it is a general rule in our constitution, that, "unless removed all officers shall continue to discharge the duties of their respective offices, until their successors are elected or appointed and qualified;" and the governor falls within the rule, unless some other provision takes him out of it as an exception to that rule, in which case, to the extent such other provision might go, he would be out of that general rule.

On search we find that section 16, art. VII of the constitution does, to the extent therein provided, take him out of the general rule by the language: "In case of the death, conviction on impeachment, failure to qualify, resignation, or other disability of the governor, the president of the senate shall act as govarnor, until the vacancy is filled or the disability removed." I should say, that under this provision, if Gen. Goff had been declared upon the face of the returns elected and had failed to qualify, the president of the senate would act as governor, ousting Gov. Wilson; for here would be a failure to qualify by the governor elected and so declared, and under the language quoted the president of the senate would come in. But the president of the senate can come into the office of governor, or rather act as governor temporarily *ex officio*, as president of the senate, only on the contingency or state of facts specified in section 16, art. VII; that is: "In case of the death, conviction on impeachment, failure to qualify, resignation, or other disability of the governor;" and under a legal rule of construction, where there is a general rule, exceptions must be strictly construed, and cases must clearly fall within the exceptions.

Now, the death, conviction or resignation of a governor is not suggested as existing as a ground for President Carr's claim. If it be said, that, because of the fact, that no one has been declared elected, no one has legally taken the oath of office, and that there exists a "failure to qualify," giving to the president of the senate for that reason under the words of the constitution a right to the office, the question arises : Has that contingency arisen within the true meaning of the constitution ? As above stated, had Gen. Goff or any one else been declared elected and had he failed to qualify, that would be a failure to qualify within the meaning of the constitution. But no one has been declared elected. The constitution says, that the returns for governor from the counties shall be sealed and sent to the Secretary of State, who shall deliver them to the Speaker of the House, by whom they shall be opened in the presence of both houses of the Legislature, and the person having the highest number of votes shall be declared elected. Can we dispense with

this declaration required by the very letter of the constitution? Does the demand for such declarations embodied in the constitution mean nothing? Constitutional requirements are regarded, unlike statutory requirements, mandatory, not directory. Cooley, Const. Lim. 78, 83.

The court of appeals of New York in *People* v. *North*, 72 N. Y. 124, held, that where the act of the Legislature has provided in a town-charter, that the returns be laid before the council, and the person having the highest number of votes shall be declared duly elected, the declaration and certificate of the council "are necessary to complete the election of a ward-officer as well as a general officer of the city, and are indispensible to qualify the candidate to enter upon the duties of his office." The same court in *People* v. *Crissey*, 91 N. Y. 616, held, that the Legislature may provide the manner, in which the result of an election shall be determined and declared; that the power to declare the result must be lodged somewhere; and that, where the mode of so doing is commanded, until it is obeyed, and such acts are done, the election is not complete, and the candidate not qualified to serve; and the court held, that for want of such declaration the old officers held over. The constitution itself in this State requires this declaration by either the joint assembly or by the speaker in its presence. How do we know, legally speaking, for the purpose of qualification who is elected until such ascertainment? What do the certificates from the many counties show? They are secret, sealed and sacred under the constitution, and no one can answer the question until then. This court has held at this term, in *Goff* v. *Wilson*, *supra*, that for want of a declaration of his election Gen. Goff had no title and was not entitled to enter upon the duties of the office of governor. The constitution divides the government into three great departments, legislative, executive and judicial, and forbids either to exercise the functions of another. It provides, that the returns of the election for governor shall go before the two houses of the legislature, in order that their result may be declared. It provides, that a contest as to the governorship shall be tried by a joint assembly of those two houses. Their jurisdiction is exclusive in the exercise of this political function. The joint assembly has had these re-

turns before it; has suspended and postponed any declaration of the result as to governor until the decision of the contest between Gen. Goff and Judge Fleming. Whether that action was right or wrong, this Court has no jurisdiction to even indicate. The legislature is the sole tribunal to take action in that matter. We possess no power directly or indirectly to review or reverse that action. The whole matter, both the function of passing on the returns sent from the counties and that of deciding on the law and the evidence, the contest between Goff and Fleming, has been taken in charge under the mandate of the constitution by the Legislature, which is waiting for the evidence to be taken by the parties, and has merely continued the case for trial.

This Court can not directly or indirectly oust the Legisislature of its jurisdiction and assuming superior wisdom and power arrogate to itself the function of saying, that either of the contestants was lawfully elected. To do so would be usurpation of unwarranted authority by this Court. Therefore this Court held, that for want of declaration of his election Gen. Goff could not have a *mandamus* to compel Gov. Wilson to admit him. If then President Carr bases his claim on a failure of. Gen. Goff or any one else to qualify, the question arises: How can any one qualify, until after he has been declared elected? How can there be a failure to qualify, until there is some person in a condition to qualify? The only provisions as to qualification of officers are in Code 1887, c. 10, s. 7, requiring, that officers shall take the oath within sixty days, after they have "been duly declared elected," with the proviso as to the executive officers, that they shall do so "on or before the 4th of March next after they are declared elected, or before they exercise the duties of their respective offices." These provisions do not contemplate or provide for any officer taking the oath before he is declared elected. Thus, if the president of the senate demand the office on account of a failure to qualify by the elected governor, the answer is "There has been no failure to qualify legally speaking, because no person has as yet become entitled to qualify. How can there be a failure to qualify, when no person has been called upon to do so? The words "failure to qualify" mean failure to qualify as required

by law, such as would forfeit the office. But the statute has not demanded this qualification until after the declaration of election.

But the distinguished counsel for President Carr says that the failure of the Legislature to declare either Goff or Fleming or any one elected creates a vacancy or "disability of the governor," and under the constitution for that cause the president of the senate comes in. This is the ground chiefly, if not solely, relied on by him. Now the language is: "In case of the death, conviction on impeachment, failure to qualify, resignation or other disability of the governor, the president of the senate shall act as governor until the vacancy is filled or the disability is removed." It says disability of "the governor." But it must be by reason of the disability of, not one who was a mere candidate,—one not declared elected,—but of one who but for some disability attaching to him could act as governor. Before the president of the senate can act, there must be a person, whose duties and powers he assumes; in whose shoes he stands. He can exercise no functions but those of the man whose position he takes. The person on account of whose disability he becomes acting governor, must be not an incompetent governor, so far as the votes of the people and the authority selected to declare his election are concerned. They must have done all they were required by the constitution to do to make him governor. If anything essential to be done by them to complete his title be wanting, he is only partly governor, not fully so, not entitled to enter into the office. The constitution is not, in section 16, art. VII, making provision for the discharge of the duties of one, who under no circumstances is entitled or ready to perform such duties himself. The president of the senate acts on the death of the governor, or on the conviction on impeachment of the governor, or on the failure of the governor to qualify, or on the resignation of the governor, or other disability of the governor. There must be in any or all those occasions calling on the president of the senate to act one, who in law can be deemed a governor. But as yet no one has been declared governor. Such declaration is under the cases cited from New York and our decision in *Goff* v. *Wilson* indispensable to give any one title as governor, and, none of the candidates having been declared

elected, no one of them is such governor under that section of the constitution, as that the president of the senate can be called on to assume the functions in his stead, which functions such governor could not himself assume because of such disability.

Again, I do not think the non-declaration of the result of the election is a disability of the governor, such as is meant by the constitution. It is simply non-action or incomplete action by the agencies of the law assigned to vest the title in the candidate. It is not like insanity, conviction of the officer for crime, continued absence or other disability connected with the person of the governor. Death, conviction on impeachment, failure to qualify or resignation would produce a vacancy, and it would seem that the language " or other disability" means something of a different character from those cases named,—something attaching to the person of the governor and disabling him ; and this construction seems confirmed by the after language of the section providing that " the president of the senate shall act as governor until the vacancy is filled or the disability is removed,"— thus using the words " vacancy " and " disability " as meaning different things; " vacancy " referring to death, conviction, failing to qualify, and resignation, but " disability " referring to something relating to the person, and for the time being disabling him, notwithstanding the use of the word " other." The words, " shall continue to discharge the duties of their respective offices until their successors are elected and qualified," seem to fit this case, where the proceedings leading to the completion of the election are yet pending but will end in the declaration of a result, when the governor will come on to qualify, while the other section, as to the president of the senate acting, seems to provide for a different class of cases; that is, where the election is complete, but there is a vacancy caused by death or other fact, or a disability preventing his action. In *Lawhorne's Case*, 18 Gratt. 93, the court under similar provisions in the Virginia constitution held, that the clause relating to the lieutenant-governor's acting in case of death or other cause disabling the governor did apply only to a case not provided for by the section authorizing officers to hold over.

Again, this position of President Carr assumes, that somebody was elected governor in November last. His petition says either Fleming or Goff was elected. Quite likely this is so. To succeed, he must have somebody elected at that election, so that he may have some one, whose place he is to take. But it does not appear, that anybody was in fact elected. The assertion of his petition, that some one was elected, even if not denied in respondent's answer, (but it is denied,) could not be taken for true, for it asserts as a fact, what, legally speaking, can not be yet known and is not susceptible of proof here. There is no declaration of the result, and the returns have never been approved or published; their contents are yet sealed and sacred, in the keeping of the joint assembly, awaiting publication. Can we or President Carr say, whether or not they show an election? They may show a tie vote. Is it clear, that we can presume, because an election was held, that some one was elected? The judge delivering the opinion in the court of appeals of New York in *People* v. *Crissey, supra,* says: "At this point it appears needful to determine, who was lawfully the alderman of the Seventh ward entitled to occupy the seat, for which Morrissey and Fleming contested. We cannot say, that either was elected. It is argued, that one must have been. That does not follow. A canvass, in which all or a majority of the inspectors concurred, or an investigation by a court of justice, in which the vote actually and honestly cast was correctly counted, might have resulted in a tie. While that is not probable, it is certainly possible. We can not know. We have no legal evidence before us from which we can give the seat to either by virtue of the election." He further said: " The votes are not here for us to count. The authority appointed by law has not acted, has certified nothing, and stands equally divided, and asserting contrary results, both of which can not be true." He also says: "For us nothing is possible except to treat the election as a failure, so far as either party seeks to found a right upon it, and deny to either any resulting benefit from that source." Under these principles the claim of President Carr, that some one was elected, and that he can stand on that fact as a foundation to entitle him to act, is untenable, as for the purposes of this

case the election is a failure, or has no yet known result, and he must be denied any resulting benefit from that source. And if it should appear, that there was a tie vote, in which case the Legislature would elect, that election would date and confer title only from the day of election and not relate back to the election in November, thus proving that no person was then elected. So no contingency has arisen, no condition exists, such as to call upon the president of the senate to act as governor. The clause of the constitution, on which he rests, is an exception to the general rule fixed by another clause, declaring that all officers shall continue to discharge their duties, until their successors are elected and qualified, and, as he does not come within that exception, he can not act, but under said general rule of section 6, art. IV, of the constitution, E. Willis Wilson has the right to continue to act as governor, until his successor shall come in.

We are in this cause called on by both sides to decide, not only whether Carr has title to admit him, but also whether Wilson has title to hold over; and, as we see it, we are compelled to pass on Wilson's right to hold over; for it seems certain that under these two provisions of the constitution, if Carr has title to enter into the office, Wilson has no title to continue to hold it. In deciding as to the right of the one we necessarily decide as to the right of the other. This case is unlike that of *Goff* v. *Wilson*, for there it was a question only of Goff's title. If his title was imperfect by reason of the absence of the declaration of his election, he failed, whether Wilson had title to hold over or not, and we did not in that cause pass on Wilson's right. If Goff's title had been complete, surely Wilson's tenure was at an end; if Goff's title was imperfect, he could not be admitted, though Wilson's claim to hold should be weak.

Mention has been made, though it does not seem to be urged, that under section 4, art. VII, of the constitution a governor is ineligible for the same office for the term succeeding that, for which he was elected, and therefore Gov. Wilson is not competent to hold over. I consider him holding over under his old term; it is a prolongation of that. His competency is tested by his eligibility for his old term. As he was eligible for that, he can hold under his old term,

and its eligibility and qualification, until his successor comes. He holds *ex officio.* In *Lawhorne's Case,* 18 Gratt. 85, a pardon was issued by Gov. Pierpont to a convict, after Pierpont's term expired, and the keeper of the penitentiary refused to obey it for that reason. The case went to the court of appeals of Virginia. Its constitution provided that "judges, and all other officers, whether elected or appointed, shall continue to discharge the duties of their respective offices, after their terms of service have expired, until their successors are qualified." Its constitution provided that "in case of the removal of the governor from office or of his death, failure to qualify, resignation, removal from the state or inability to discharge the powers and duties of the office the said office with its compensation shall devolve upon the lieutenant governor." There being no election of a governor,—no qualification of one,—the court held, that Gov. Pierpont should continue in his office beyond his term notwithstanding the latter provision; and held, that he was capable of holding over, though the Virginia constitution contained the same clause as to the ineligibility for a second term, as is found in ours.

For these reasons the demurrer to the return must be overruled, the peremptory writ of *mandamus* be denied, and the petition dismissed.

DISMISSED.