J. BLACKBURN WATTS, *who sues at relation of* W. E. HUNT, *etc.* v. G. W. LANHAM

(No. 7600)

Submitted April 20, 1933. Decided May 2, 1933.

(Rehearing denied June 9, 1933)

*George Poffenbarger* and *James M. Mason,* for plaintiff in error.

*Hillis Townsend* and *E. S. Bock,* for defendant in error.

WOODS, JUDGE:

This is a proceeding in quo warranto to determine the right of G. W. Lanham to hold and exercise the office of president of the board of education of Elk district, Kanawha County. The case was tried to the court, in lieu of a jury. Error is prosecuted from a finding and judgment for respondent Lanham.

The sole issue is whether W. E. Hunt, the party at whose relation this proceeding was instituted, repudiated a purported resignation as president of the board aforesaid prior to its acceptance on November 4, 1932.

Hunt was elected to the office in question in November, 1930, for a term of four years, beginning July 1, 1931. On October 25, 1932, he was arrested by a member of the department of public safety on a charge of drunkenness, and placed in the county jail. The following morning he sent for Mont Melton, a deputy sheriff, to secure his release. Mont Melton called his brother, Boone Melton, chairman of the Democratic county executive committee, who, after conferring with Hunt, agreed to find a bail surety. Thereafter, Mont Melton took Hunt before the justice, where he found James M. Mason, an attorney, who, at the instance of Boone Melton, had already arranged with the justice as to the amount of bond and date of appearance, and one Alonzo Lowe, the latter being a friend

of Hunt. Mason took from his pocket a paper, directed to Miss Goodall, county superintendent of schools, which purported to be a resignation of the office of president of the board of education of Elk district. It requested immediate acceptance. This paper had been previously prepared in longhand by Mason at the direction of Boone Melton. Mason, without comment, directed Hunt to affix his signature thereto, which he did. The parties then went into an adjoining room, where Hunt executed bond, with Lowe as surety. On November 1, 1932, Hunt informed Mason that he had concluded to plead guilty and pay a fine. In this conversation Mason remarked: "I still have your resignation." Hunt asked, "What resignation?" And upon being confronted with the foregoing paper, which he had signed at the instance of Mason on October 26th, repudiated it, stating he had no knowledge of its contents at the time but thought it had something to do with his bail. Mason told him that it was secured at the request of Boone Melton. Hunt immediately looked up Boone Melton and asked that the paper be returned to him. Upon learning that it had not been turned over to Melton, Hunt went to Democratic headquarters where he waited without avail for Mason. Upon Mason's arrival at headquarters, Melton demanded the paper, which was delivered with the statement that it should not be turned over to Miss Goodall, the superintendent, to whom it was addressed, until he (Mason), Casto and Hunt could talk the matter over. That same evening Melton turned over the paper to Casto, who called Miss Goodall and told her to give publicity to the resignation in the daily papers, which she did. The first notice appeared in the morning papers of November 2nd. Mason testified that he saw Miss Goodall on November 4, 1932, and told her "the exact circumstances under which the resignation had been obtained." The resignation was accepted by the county superintendent on the last-mentioned date. Thereupon, both political parties proceeded to nominate candidates to fill the purported vacancy, and Lanham, Republican, received a majority of votes, and was declared elected by the county court.

It appears from the record that between October 26th and November 1st that Hunt performed duties as a member of the board of education.

In 22 R. C. L., p. 556, sec. 260, it is stated: "Resignations to public offices are generally accepted and it is not infrequently ruled that if a person so desires he can resign, or relinquish his office, and that no formal act of resignation is necessary to render the resignation valid, especially when the resignation is unconditional and goes into effect, immediately. But the better opinion is that a public officer does not have the privilege of resigning, since the public has a right to the services of all the citizens, and may demand them in all civil departments as well as in the military. Therefore, to be effective, the resignation must be accepted by competent authority, either in terms, or by something tantamount to an acceptance, such as the appointment of a successor." The so-called "better opinion" is supported by the Supreme Court of the United States. *Edwards* v. *U. S.,* 103 U. S. 471; *Thompson* v. *U. S.,* 103 U. S. 480. And we have, in effect, accepted it in this state. *State* v. *Blair,* 87 W. Va. 564, 105 S. E. 830. And a resignation, although knowingly and intentionally signed, may be repudiated and revoked at any time before acceptance thereof. *State* v. *Fowler,* 160 Ala. 186, 48 So. 985; *State* v. *Huff,* 172 Ind. 1, 87 N. E. 141; *State ex rel. Ryan* v. *Murphy,* 30 Nev. 409, 97 P. 391; *State ex rel. Young* v. *Ladeen,* 104 Minn. 252, 116 N. W. 486; *State* v. *Stickley,* 80 S. C. 64, 61 S. E. 211; *Kearney* v. *Flannery,* 8 Kulp (Pa.) 219.

No one denies that Hunt repudiated the purported resignation to Mason, and that he demanded its return of Melton. In other words, he admittedly attempted to intercept the purported resignation. His actions from October 26th to November 1st, as a lawful member of the board, likewise add unusual force to his contention that he never intended to execute a resignation, and if so, that he had in fact repudiated it. *State ex rel. Young* v. *Ladeen, supra.* In view of the foregoing facts, notwithstanding the conflicting evidence of lay witnesses as to whether he had or had not resigned, we are led to the conclusion that plaintiff's acts amounted to a repudiation of the paper.

In view of the foregoing, we are of opinion to reverse the judgment of the circuit court, and to enter judgment for the plaintiff.

*Reversed and entered.*