J. S. DAUGHERTY, *et al.*

*v.*

TOWN OF MABSCOTT, *etc., et al.*

(CC 735)

Submitted April 6, 1948. Decided June 8, 1948.

*Fletcher W. Mann,* for plaintiffs.

*Anthony J. Sparacino,* for defendants.

KENNA, JUDGE:

This declaratory judgment proceeding was brought in the Circuit Court of Raleigh County by J. S. Daugherty, Paige Cook, William L. Bower, William Ingram, Owen Miller, Earl Rogers and Kester Thompson contending that they had been elected and duly qualified as mayor, recorder and members of the common council of the Town of Mabscott respectively and that the present *de facto* incumbents, L. C. Simpson as mayor, A. Ray Fink as recorder and Lee Bower, L. D. Fink, J. B. Kirk, E. H.

Loflin and Carl Wood as council members had unlawfully refused to deliver to them the offices to which they are legally entitled. The Circuit Court of Raleigh County overruled a demurrer to the declaration of the plaintiffs and certified to this Court the following questions for decision:

"1. Is the declaration filed by the plaintiffs sufficient in law and does it state a cause of action?

"2. Is Section 11, Article 3, Chapter 8, Serial Section 479 of the West Virginia Code prescribing the time within which persons elected to municipal offices shall take and subscribe the oath of office mandatory or directory?

"3. Does the twenty day period prescribed in the Code Section last above referred to begin to run from the date the election is held and the votes are cast or does it begin to run from the date that the votes are canvassed and results certified by the canvassing body?"

The initial query arising upon the first question certified is, does a proceeding to try the title to public office as between two or more contesting claimants lie under our "Uniform Declaratory Judgments Act", Chapter 26 of the Acts of the Legislature of 1941 (Michie's Code, Article 13, Chapter 55) ? Under our statute and the previous holdings of this Court, mandamus, generally spoken of as an extraordinary remedy, is the procedure for that purpose ordinarily approved. However, while in no way limiting the use of mandamus, we believe that jurisdiction under the act referred to has been settled by the syllabus in the case of *Crank* v. *McLaughlin,* 125 W. Va. 126, 23 S. E. 2d 56, which reads as follows:

"Under our 'Uniform Declaratory Judgment Act', Chapter 26, Acts of the Legislature, 1941, courts may enter judgments or decrees declaratory of the law, in cases of actual and existing controversies, such as might be the basis of litigation through the ordinary or extraordinary processes of law or equity, and not otherwise."

The declaration alleges that under the charter of the Town of Mabscott an election was held on June 3, 1947, to select for the term of two years, beginning on July 1 of that year, a mayor, recorder and five members of the common council of that town, and that on June 9, 1947, the returns of that election were canvassed by the town council with the result that J. S. Daugherty was found to have been elected mayor, Paige Cook recorder, and Bower, Ingram, Miller, Rogers and Thompson were found to have been elected to the town council; that the plaintiffs got no notice of their election nor information concerning the results prior to June 9, 1947, except that posted outside each polling place within the municipality; and that on June 26 each of the plaintiffs took the oath of office appropriate to the position to which each had been elected. The declaration further alleges that each of the plaintiffs, on July 1, 1947, presented himself for duty in the office to which he had been elected and was by the defendants refused admission, the defendants taking the position, as they now contend, that under the provisions of Code, 8-3-11, which requires every person elected to a municipal office, subject to certain exceptions with which we are not here concerned, to take and subscribe the oath of office "within twenty days after his election", the plaintiffs had forfeited their respective offices due to the fact that the municipal election was held on June 3 and the plaintiffs had not taken the oath of office until June 26, more than twenty days after their election. In answer to this contention the plaintiffs assert that under the statute in question a person is not to be regarded as elected to a municipal office at the moment the polls are closed on the day that the election is held, nor at any time prior to an official ascertainment of the aggregate result in all the polling precincts involved. They say that that section clearly contemplates an exact time when the full vote in both small and large municipalities can be determined officially and cannot rest upon private inquiry. The plaintiffs further contend that the statute in question in not mandatory, and consequently that even though this Court is of the opinion that their first position is not ten-

able, they have not forfeited their right to office by a failure to strictly comply with its terms, but that a substantial compliance is all that is required under a directory statute and this they have done.

As a general rule an election is not deemed to be complete until the result has been officially determined and declared. 18 Am. Jur., 357, and cases cited in footnotes 12 and 13. Though there seems to be no case in direct point decided in this jurisdiction, that, we believe, is the undoubted trend of our West Virginia cases shown plainly by Judge Brannon's opinion in *Carr* v. *Wilson*, 32 W. Va. 419, 427, 9 S. E. 31, in which the following language will be found:

> "How can any one qualify, until after he has been declared elected? How can there be a failure to qualify, until there is some person in a condition to qualify? The only provisions as to qualification of officers are in Code 1887, c. 10, s. 7, requiring, that officers shall take the oath within sixty days, after they have 'been duly declared elected,' with the proviso as to the executive officers, that they shall do so 'on or before the 4th of March next after they are declared elected, or before they exercise the duties of their respective offices.' These provisions do not contemplate or provide for any officer taking the oath before he is declared elected."

It is not difficult to see from Judge Brannon's reasoning that an election is not to be regarded as concluded until the result in the governmental unit holding it is officially ascertained. Then the next question that arises is when the ascertainment of that result for the purpose of completing the election occurs. Does it await the official declaration of the result, which under our statute and cases might await the conclusion of a recount, or is the election in the sense that word is used in Code, 8-3-11, finished and completed at a time which can be regularly fixed which precedes the potential delay involved in awaiting the official declaration of result as it relates to a recount under Code, 3-5-33? For a lucid treatment of a declaration of result as to how and when it affects the recount in a

county election see *State ex rel. Flanning* v. *Mercer County Court*, 129 W. Va. 584, 41 S. E. 2d 855.

Of course we are not here directly concerned with the statutes relating to recount nor with the applicability of Code, 8-3-16, save in so far as they relate to the completion of a municipal election as it affects the time when the elected officers become qualified to take the oath of office.

It would appear that the question before us is to decide whether an ascertainment of the result in the respective units can be reached prior to the time that the order of a canvassing board officially declaring the result is entered, bearing in mind that the official declaration of the result must await the conclusion of a possible recount. Upon examining the statute and with the decisions from other jurisdictions in mind as persuasive, and particularly in view of the discussion in the *Carr* case, we have reached the conclusion that a candidate does not become qualified to take the oath of office until the canvassing board has fully performed its function in arriving at the result of the election and has entered its order officially declaring that result. That is the only time, in our opinion, that the result of an election can be said to have been officially ascertained or the canvass of the return definitely concluded for the purpose of qualifying for public office. To say that the closing of the polls on the day of election commences the running of the twenty days time within which the officer must take the oath of office, within the meaning of Code, 8-3-11, we think is manifestly impractical. At that time there is no way that a candidate can ascertain the result with certainty, and we do not believe that our Legislature intended, in effect, to require every person running for a municipal office, without regard to the outcome of an election, in order to be certain of retaining an office to which he may or may not be elected, to take the prescribed oath. In a close election with the official declaration of result delayed by recount beyond the twenty days after election day, defeated candidates would be impelled to take the oath of office which persons qualified only should do.

Having decided that Code, 8-3-11, has been fully complied with in the strictest sense and that a proceeding in declaratory judgment to try the right to public office does lie, the holding of the Circuit Court of Raleigh County in overruling the demurrer to the declaration of the plaintiffs is to be sustained. The second question certified, in view of our holding that the statute in question has been strictly complied with, is not reached and therefore not answered.

*Affirmed.*