FRED GREEN

*v.*

CHARLES G. JONES

(No. 11031)

Submitted January 27, 1959.  Decided March 24, 1959.

GIVEN, BROWNING, JUDGES, dissenting.

*Somerville, Hyer & Littlepage, Samuel D. Littlepage,* for plaintiff in error.

*Carroll W. Casto, Cecil B. Dean,* for defendant in error.

278

HAYMOND, JUDGE:

In this election contest instituted in the County Court of Mason County by written notice dated August 15, 1958, the contestant, Fred Green, seeks a declaration of his election as a member of the Board of Education of Mason County at the election for members of the board of education of that county on August 5, 1958, for a term beginning at the close of such election, and denies the right of the contestee, Charles G. Jones, to be elected to that office on the ground that as Robert Adkins and Howard Schultz were members of the board and resided in Lewis District of that county at the time of the election and as the contestee also resided in that district, he was disqualified to be elected to the office of member of the board. On August 11, 1958, the County Court of Mason County, sitting as a board of canvassers, canvassed the votes cast, ascertained the result of the election and issued a certificate of election to the contestee, Charles G. Jones, as a member of the board of education for the short term beginning August 5, 1958.

Upon a hearing of the contest by the county court the contestant moved the court to set aside the election of the contestee, Charles G. Jones, on the ground that he was disqualified from holding the office of member of the Board of Education of Mason County and to declare the contestant, Fred Green, elected as a member of the board of education. By final order entered September 15, 1958, the county court denied the foregoing motion of the contestant.

On appeal by the contestant to the Circuit Court of Mason County, that court, by final order entered October 30, 1958, held that the contestee, Charles G. Jones, was duly elected a member of the Board of Education of Mason County at the election held August 5, 1958, and was qualified to hold that office for the short term beginning on the day he received his certificate of election, affirmed the final order of the county court, and dismissed the proceeding at the cost of the contestant. Upon

the application of the contestant this Court granted this statutory appeal on November 24, 1958.

The material facts, which are undisputed, are set forth in a written stipulation approved by the attorneys representing the respective parties to this proceeding.

At the general election held in Mason County on August 5, 1958, the contestant, Fred Green, the contestee, Charles G. Jones, and four other persons, were candidates for the office of member of the board of education of that county. As certified by the board of canvassers Earl Keefer, of Graham District, received 2499 votes, Charles G. Jones, the contestee, of Lewis District, received 1981 votes, Ralph Crump, of Lewis District, received 1543 votes, Fred Green, the contestant, of Hannan District, received 1468 votes, James C. Dabney, of Hannan District, received 988 votes, and Frederick R. Frey, of Lewis District, received 623 votes.

At the time of the election the board of education consisted of these five members: Keith E. Arnold, of Graham District, whose term expires December 31, 1962, Mrs. C. P. Stout, of Clendenin District, whose term expires December 31, 1960, Robert Adkins, of Lewis District, whose term expires December 31, 1960, Howard Schultz, of Lewis District, whose term expired December 31, 1958, and James C. Dabney, of Hannan District, whose term expired at the conclusion of the election on August 5, 1958. Two members of the board were to be selected at the election, one member for a long or six year term beginning January 1, 1959, to succeed Howard Schultz whose term expired December 31, 1958, and another member for a short term to succeed James C. Dabney whose appointment as member continued until the general election on August 5, 1958.

On August 8, 1958, the County Court of Mason County, sitting as a board of canvassers, began the canvass of the votes cast at the election. Before completing the canvass, however, the board adjourned until August 11, 1958, at which time it completed the canvass of the

votes, ascertained the result of the election, and issued a certificate to Earl Keefer as a member of the board of education for the long term and a certificate to Charles G. Jones as a member of the board of education for the short term.

On August 5, 1958, the board of education held a regular meeting which was attended by all its members including Howard Schultz who at the time gave no indication that he intended to resign. During the afternoon of August 8, 1958, the president of the board called a special session to meet at seven o'clock that evening for the purpose of accepting the resignation of Howard Schultz as a member of the board. The meeting convened at 7:00 o'clock, p.m., and adjourned at 7:07 o'clock, p.m. Three members, Mrs. C. P. Stout, Howard Schultz and James C. Dabney, were present and the remaining two members, Keith E. Arnold and Robert Adkins, were absent from the meeting. At the meeting Mrs. C. P. Stout, the president of the board, presented a letter from Howard Schultz, dated August 4, 1958, in which he tendered his resignation as a member of the board effective immediately for the stated reason that he was considering another important position which would require much of his time and cause him to be absent from meetings of the board. On motion made by Dabney and seconded by Schultz, the resignation was accepted by the affirmative votes of Dabney, Schultz and Stout.

Between two o'clock, p.m., and three o'clock, p.m., of August 8, 1958, Adkins and Arnold, the two absent members, were personally notified by telephone by the secretary of the board of the special meeting to be held at 7:00 o'clock, p.m., for the purpose of accepting the resignation of Schultz and about 4:30 o'clock, p.m., of the same day, while they were at work at plants located about twenty miles from Point Pleasant, they were served with written notice of the meeting. Adkins and Arnold were employed on a shift which lasted from 4:00 o'clock, p.m., until 12:00 o'clock midnight. They received notice of the meeting by telephone before they went to work that

evening but did not receive the written notice of the meeting until after they had reported for work.

On August 11, 1958, the contestee, Charles G. Jones, presented his certificate of election at the office of the board and took the oath of office which was administered by the superintendent of schools of Mason County. On August 13, 1958, at a session of the board, the contestant, Fred Green, appeared and presented his claim as a member of the board but his request that the oath of office be administered to him was refused.

There are no rules or regulations concerning special meetings of the Board of Education of Mason County.

The principal questions for decision are whether the written notice to Adkins and Arnold, the two absent members, was a sufficient notice of a special meeting of the board of education and the action taken at such meeting in accepting the resignation of Schultz as a member of the board was valid; and whether Schultz was a member of the board when the contestee was declared to be elected. No issue of fraud in connection with the election of August 5, 1958, or the resignation of Schultz is presented on this statutory appeal by either party to this proceeding.

Section 5b, Article 4, Chapter 86, Acts of the Legislature, 1951, regular session (Michie's Code, 1955, annotated, Section 5b, Article 4, Chapter 3), provides that "An election for the purpose of electing members of the county board of education shall be held on the same date as the primary elections as now provided by law, but upon a non-partisan ballot printed for that purpose. In such non-partisan election the person receiving the highest number of votes, shall be elected for a long term, and if more than one is to be elected for a long term, the one receiving the next highest shall be elected; and if more than two are to be elected the candidate or candidates receiving the next highest votes shall be declared elected for any short term or terms, as the case may be, to fill vacancies; but no more than two such members shall be

elected from the same magisterial district, and then only when such magisterial district does not have a hold-over member of said board, and if such magisterial district has one hold-over member on said board only one member shall be elected as aforesaid; and if more persons from a magisterial district receive the highest number of votes in said election, then of such persons only the person or persons having the highest vote who do not make the aggregate number of elected members and hold-over members more than two from such magisterial district shall be declared elected, and the remaining members shall be declared from the highest from other magisterial districts; and in no event shall any member be declared elected from the same magisterial district wherein resides two already elected or otherwise qualified members of such board who will continue to hold office after the beginning of the term for which such election was held."

As it clearly appears that on August 5, 1958, the date of the general election, and at least until August 8, 1958, Robert Adkins and Howard Schultz, both of whom resided in Lewis District, were members of the board of education, the contestee, Charles G. Jones, who received the second highest number of votes and also resided in Lewis District, would not be eligible for election as a member of the board if Schultz and Adkins continued to be members of the board when the election at which Jones was a candidate ended. Crump, who received the third highest number of votes, was also a resident of Lewis District and would likewise be ineligible for election as a member of the board. If Jones, in the situation just indicated, was ineligible for election as a member of the board because there were two members of the board from Lewis District when the result of the election was declared, the contestant, Fred Green, who resided in Hannan District and received the fourth highest number of votes, being eligible, was, due to the disqualification of both Jones and Crump, duly elected as a member of the board for the short term. Keefer who was eligible

and who received the highest number of votes was duly elected as a member of the board for the long term. It therefore becomes necessary, in the decision of this proceeding, to determine whether Schultz was a member of the board when Jones was declared to be elected.

Section 1, Article 5, Chapter 18, Code, 1931, as amended, provides that each county school district shall be under the supervision and control of a county board of education, which shall consist of five members who shall be nominated and elected by the voters of the county without reference to party affiliation, and that no more than two members shall be elected from the same magisterial district. Section 4 of the same article and chapter, relating to meetings of a county board of education, contains, among others, these provisions: "Special meetings may be called by the president or any three members, but no business shall be transacted other than that designated in the call. A majority of the members shall constitute the quorum necessary for the transaction of official business."

It should be observed that the quoted provision contains no requirement of notice of a special meeting of the board. Under a prior statute, Section 6, Chapter 45, Code, 1899, since repealed, which required notice of a meeting of the board to be given to all members, this Court held in *Cunningham* v. *Board of Education,* 53 W. Va. 318, 44 S. E. 129, that a meeting of two members of a board of education at a time and place of which no notice was given to the other member of the board, and at which he was not present, is not a legal meeting and that any attempted official act at such meeting is null and void. In the *Cunningham* case this Court also held that a board of education can perform official acts only when a quorum is assembled as a board after due notice to all the members, except that the president and the secretary, as provided by the statute, may sign orders upon the sheriff for any sum of money which may have been already ordered to be paid. Under a later statute,

Section 45, Chapter 45, Code, 1923, also since repealed, which provided that "Upon the call of the president or of the two school commissioners boards of education may hold other meetings, but no business shall be transacted at any called meeting except such as may be designated in the call therefor, of which all the members have had notice.", this Court held in *Holton* v. *Board of Education of Guyan Valley High School*, 113 W. Va. 590, 169 S. E. 239, that when it does not appear that an absent member of the board had due notice of a called meeting, the meeting is void and any attempted official acts at such meeting are null and void. See also *Ward* v. *Board of Education*, 80 W. Va. 541, 92 S. E. 741; *Daugherty* v. *Board of Education*, 86 W. Va. 522, 103 S. E. 406.

Regardless of the absence from the current statute of any requirement of a notice of a special meeting of a board of education, however, it is elementary that no authority existing in a number of persons can be rightfully exercised, in the absence of any members of such group or body, unless all have had reasonable notice and an opportunity to be present. *Reilly* v. *Oglebay*, 25 W. Va. 36. It is also fundamental that notice must be given an interested party of any proposed step which affects his rights. *Smith* v. *Wallace*, 116 W. Va. 546, 182 S. E. 538. No notice of a special meeting of a board of education is necessary, however, if all members are present and participate in the meeting; and notice of a special meeting of a board of education is for the benefit of the members of the board. *Capehart* v. *Board of Education*, 82 W. Va. 217, 95 S. E. 838.

Notwithstanding the lack of any specific provision in Section 4, Article 5, Chapter 18, Code, 1931, as amended, requiring notice of a special meeting of a board of education, it is clear that in the absence of any of its members, reasonable notice of the time and place of a special meeting of a board of education is essential to enable the board to take valid official action at such meeting. When a statute or rule or regulation does not prescribe the period for which notice of a meeting shall be given a

notice given a reasonable time before the meeting is sufficient. See 78 C.J.S., Schools and School Districts, Section 133; 66 C.J.S., Notice, Section 18b; *Burden* v. *Stein*, 25 Ala. 455; *The People* v. *Frost*, 32 Ill. App. 242. A reasonable time within which notice of a meeting must be given before such meeting means sufficient time to the party notified for preparation and attendance at the time and place of such meeting. 66 C.J.S., Notice, Section 18b. See also *Sterling Manufacturing Company* v. *Hough*, 49 Neb. 618, 68 N. W. 1019. The burden of proving notice rests upon the party who asserts the existence of notice. 66 C.J.S., Notice, Section 21a; 39 Am. Jur., Notice and Notices, Section 32; *Reed* v. *Eastin*, 379 Ill. 586, 41 N. E. 2d 765; *Carter* v. *Thorp*, 114 Va. 348, 76 S. E. 950; *Crane's Nest Coal and Coke Company* v. *Virginia Iron, Coal and Coke Company*, 108 Va. 862, 62 S. E. 954.

It is the contention of the contestant that the written notice given to Adkins and Arnold and with which they were served about 4:30 o'clock of the afternoon of the day of the meeting was not a sufficient notice; that the special meeting of the board held pursuant to such notice was not a legal meeting of the board; and that the action of the board in accepting the resignation of Schultz was invalid. There is no merit in this contention. According to the stipulation which contains the only facts disclosed by the record concerning such notice, Adkins and Arnold, though not then properly notified, were informed between two and three o'clock and before they reported for work at the plants at which they were employed, that a special meeting for the purpose of accepting the resignation of Schultz would be held at 7:00 o'clock that evening. They possessed this knowledge when they were formally served with notice about 4:30 o'clock that afternoon while at work at the plants approximately two and half hours before the meeting. If they could have come, apparently from their homes in Point Pleasant, to their work at plants approximately twenty miles away, which they evidently did during the

period approximately one and one-half hours between the time they were informed of the meeting between two and three o'clock and their arrival at the plants in time to begin their work at 4:00 o'clock, there was ample time for them to have left the plants and returned to Point Pleasant during the period of two and one half hours between the time they were served with the notice and the time of the meeting at 7:00 o'clock to have been present at the meeting.

There is no showing that Adkins and Arnold could not have traveled the distance of approximately twenty miles between the plants at which they were at work and the place of the meeting by any ordinary means of transporation, which presumably were available as they must have been when they went to the plants to report for work, in time to attend the meeting; or that any unusual traffic conditions existed which would have unduly delayed or prevented them from getting to the place of the meeting in time to attend and participate in it. Usually a trip of that distance can be completed in less than an hour under ordinary traffic conditions and it does not appear that such conditions were other or different than ordinary during the day of the meeting.

There is likewise no showing that either Adkins or Arnold could not have left his work in response to the notice without loss, difficulty or inconvenience to either of them. That it might have been difficult or inconvenient for them to have attended the meeting in the existing circumstances, however, is of no importance and could not affect or limit their knowledge that the meeting would be held at the time and place specified in the notice. But even if it had appeared, as it does not, that it would have been either difficult or inconvenient for either of them to have left his work to attend the meeting, such difficulty or inconvenience does not excuse their absence. It was their plain duty as members of the board to be present at the meeting and participate in its action concerning the resignation of one of its members. See *Honaker* v. *Board of Education of Pocatalico Dis-*

*trict,* 42 W. Va. 170, 24 S. E. 544, 32 L.R.A. 413, 57 Am. St. Rep. 847. In *The Commonwealth* v. *Callaghan,* 2 Va. Cases 460, the court said: "We hold it to be a sound doctrine, that the acceptance of every office, implies the tacit agreement on the part of the incumbent, that he will execute its duties with diligence and fidelity." It is the policy of the law that public officers should devote their time and energies to the duties of their office. 67 C.J.S., Officers, Section 115; 42 Am. Jur., Public Officers, Section 138. A person who accepts public office accepts its burdens and obligations with its benefits; he subjects himself to all constitutional and legislative provisions relating to the office and undertakes to perform all the duties of the office; and while he remains in such office the public have the right to demand that he perform such duties. 43 Am. Jur., Public Officers, Section 264. "Whenever a public officer accepts such office and enters upon the discharge of his duties as such, he takes it with all the burdens that are placed or may be placed upon such office according to law; * * *." *McFarlin* v. *Board of Drainage Commissioners of Middle River District,* 153 Ga. 766, 113 S. E. 447.

It is significant that neither Adkins nor Arnold testified concerning the sufficiency of the notice; that there is no indication that either of them, for whose benefit as members of the board notice of a special meeting is required to be given, complained or contended at any time that the notice was not a reasonable notice or that it was not served upon them in sufficient time to enable them to be present at the meeting; and that the stipulation contains no facts which indicate whether they considered it to be sufficient or insufficient to permit their attendance at the meeting. In the absence of any facts disclosed by the record in explanation of their failure to attend the meeting, and in the light of the facts set forth in the stipulation with respect to the notice, it may reasonably be inferred that neither of them intended to attend the meeting in any event and that they would not have been present even if they had been served with the

notice as much as two or three days in advance of the meeting. What constitutes reasonable notice with respect to the period of time depends upon the facts and circumstances of each particular case and is not determined by any fixed rule or formula. In the circumstances of this case, as disclosed by the facts set forth in the stipulation, it is clear that the notice served upon Adkins and Arnold during the afternoon of the day of the special meeting of the board of education was sufficient in that it was a reasonable notice and afforded them ample time and opportunity to have been present at and to have participated in the meeting.

To terminate the status of Schultz as a member of the board of education, it was necessary that his resignation be accepted by effective action of the board. Though according to some authorities, no acceptance is necessary to render the resignation of a public officer effective, the better and generally prevailing view is that to be effective the resignation of a public officer must be accepted by competent authority and that without acceptance the resignation is of no effect and the officer remains in office. 43 Am. Jur., Public Officers, Section 167. In *Watts ex rel. Hunt* v. *Lanham,* 113 W. Va. 808, 169 S. E. 461, this Court held that a written resignation of a public officer does not take effect until it has been accepted by an officer or a tribunal having authority to accept it. As the meeting at which the resignation of Schultz as a member of the board of education was acted upon was a legal meeting of the board, at which three members constituting the statutory quorum were present, and the resignation was accepted by a majority of the members present, without the vote of Schultz who was disqualified to vote on the question, the acceptance of the resignation was valid and effective and terminated his status as a member of the board.

The remaining question for consideration is whether Jones if eligible for election as a member of the board of education was elected while Schultz, as one of the two members of the board residing in Lewis District,

would continue to hold office after the beginning of the term for which such election was held. Under the statute, Section 5b, Article 4, Chapter 88, Acts of the Legislature, 1951, regular session, if that situation existed Jones was not eligible for election; if it did not exist he was eligible for election as a member of the board. An election is not deemed to be complete until the result is determined and declared. 18 Am. Jur., Elections, Section 268; *Ex Parte Sanders,* 147 Texas 248, 215 S. W. 2d 325; *Kennedy* v. *Broughton,* Court of Civil Appeals of Texas, 70 S. W. 2d 500; *State ex rel. Morris* v. *Bulkeley,* 61 Conn. 287, 23 A. 186; *People ex rel. Woods* v. *Crissey,* 91 N. Y. 616; *The People ex rel. Conliss* v. *North,* 72 N. Y. 124. In Paine on Elections, paragraph 625, the text contains this statement: "Until the result is determined and declared, either in the manner so prescribed, or by the adjudication of a tribunal of competent jurisdiction, the election is not complete; and the candidate is not entitled to assume the office." In 9 R.C.L., Elections, Section 116, is this statement: "An election is a process which includes registration, nomination, the voting and the manner in which the votes are to be counted and the result made known. Each of these steps must be taken in pursuance of the law at the time the election is had. The declaration of the result is an indispensable adjunct to the process." See also *Gragg* v. *Dudley,* 143 Okla. 281, 289 P. 254.

The reasoning of this Court in *Goff* v. *Wilson,* 32 W. Va. 393, 9 S. E. 26, 3 L.R.A. 58, and in *Carr* v. *Wilson,* 32 W. Va. 419, 9 S. E. 31, 3 L.R.A. 64, accords with the view that an election is not complete until the result is determined and declared. In *Carr* v. *Wilson,* 32 W. Va. 419, 9 S. E. 31, 3 L.R.A. 64, this Court held in point 4 of the syllabus that a declaration of election to the office of governor, as provided by Section 3, Article VII of the Constitution, is indispensable to perfect and consummate title to that office. In the opinion in that case, discussing the case of *The People ex rel. Conliss* v. *North,* 72 N. Y. 124, and *People ex rel. Woods* v. *Crissey,* 91 N. Y.

616, and with particular reference to the latter of those two cases, this Court said: "The same court in *People* v. *Crissey,* 91 N. Y. 616, held, that the Legislature may provide the manner, in which the result of an election shall be determined and declared; that the power to declare the result must be lodged somewhere; and that, where the mode of so doing is commanded, until it is obeyed, and such acts are done, the election is not complete, and the candidate not qualified to serve; and the court held, that for want of such declaration the old officers held over. The constitution itself in this State requires this declaration by either the joint assembly or by the speaker in its presence. How do we know, legally speaking, for the purpose of qualification who is elected until such ascertainment?"

In *Daugherty* v. *Town of Mabscott,* 131 W. Va. 500, 48 S. E. 2d 342, this Court held that a municipal officer is to be regarded as elected when the returns of the election have been duly canvassed to that effect and the result declared by order of the body authorized by law to do so, and not before. To the same effect is the recent case of *Hertzog* v. *Fox,* 141 W. Va. 849, 93 S. E. 2d 239, in which this Court reiterated the pronouncement in the *Daugherty* case that a municipal officer is to be regarded as elected when the returns of the election have been duly canvassed to that effect and the result declared by order of the body authorized by law to do so, and not before. The principle of those cases applies to the case at bar; and a member of a board of education is to be regarded as elected when the returns of the election have been duly canvassed to that effect and the result declared by order of the body authorized by law to do so, and not before those acts are completed.

The resignation of Schultz as a member of the board of education was accepted by valid action of the board at the special meeting on August 8, 1958, before the declaration of the election of the contestee on August 11, 1958, and at the time of that declaration there were not two qualified members of the board residing in Lewis

District who would continue to hold office after the beginning of the term for which the election of August 5, 1958, was held. In this situation the contestee was eligible for election as a member of the board of education and, having received the second highest number of votes cast at that election, he was duly elected to that office. That the contestee received 1981 votes, or 513 more votes than the 1468 votes received by the contestant, indicates clearly that the voters of Mason County preferred him as a member of the board of education instead of the contestant; and the action of the county court and of the circuit court in sustaining the validity of his election gives effect to the will of the voters of that county as expressed at the election on August 5, 1958.

In view of the conclusion reached in connection with the principal questions involved, it is unnecessary to discuss the contention of the contestant that the notice required for the special meeting of the board of education on August 8, 1958, was the five day notice provided by Section 21, Article 1, Chapter 31, Code, 1931, as amended, or the contention of the contestee that the judgment of the Circuit Court of Mason County in the separate proceeding of *Fred Green* v. *Board of Education of Mason County* is res judicata and controlling upon the question of the sufficiency of the notice served upon Adkins and Arnold, except to state that there is no merit in either contention.

The judgment of the circuit court affirming the order of the county court is affirmed.

*Affirmed.*

GIVEN, PRESIDENT, dissenting:

I am unable to concur in the majority opinion for two reasons, first, because I believe the problem actually involved is not to determine when an election is at an end, but whether the result of an election when ascertained according to statutory requirements relates to the day on which the election was held, or to some future uncertain date, and, second, for the reason that the notice

of the special meeting of the board of education, held at 7:00 P. M. on the eighth day of August, 1958, was insufficient insofar as the two absent members were concerned.

First: According to the stipulation, two members of the board of education were to be elected at the election held on August 5, one for a "long term", to begin January 1, 1959, "to fill the vacancy created by the expiration of the term of Howard Schultz", of Lewis District, and one to fill a "short term", a vacancy created by the expiration of the "term of James C. Dabney", of Hannan District. Dabney was an appointee, to fill a vacancy, "until his successor has been duly elected and qualified". On August 5, the day of the election, two members of the board of education, Robert Adkins and Howard Schultz, were residents of Lewis District. The term from which Schultz resigned, the remainder of his unexpired term, was not involved in the election; in fact, no vacancy existed as to the same until long after the day of the election. Though Jones received a greater number of votes than Green, he could not have qualified for the office on the day of his election, because of the statutory provisions precluding more than two members from the same district from holding such office, but Green could have qualified, under the statute, on that day. The real question, therefore, is whether the creation of a vacancy, and the filling of that vacancy by appointment, may preclude a candidate from holding the office for which he was a candidate and for which he received a sufficient number of votes, and for which he was, in every respect, eligible.

It is my view that what third parties may do subsequent to the day of the election should not be permitted to defeat the right of a candidate to be inducted into the office for which he received a sufficient number of votes on the day of the election to entitle him to qualify at that time. To hold otherwise, it appears to me, places it within the reach of third parties to defeat the purpose of the statute and the will of the voters. What person will be-

come a candidate for such an office, knowing that by the simple procedure of the resignation of one or more members subsequent to the day of the election, after the results are known but before the completion of the canvass, and the filling of the vacancy or vacancies thereby created by appointment of a person or persons from the district of the candidate, he may be denied the offiice to which elected? The Legislature could not have intended any such result. It could not have been intended that the majority of a board of education can so perpetuate their control of the affairs of the public.

The statute, Code, 3-4-5(b), as amended, provides that the candidate "receiving the highest number of votes shall be elected for a long term, and if more than one is to be elected * * * the candidate or candidates receiving the next highest votes shall be declared elected for any short term or terms * * * but no more than two such members shall be elected from the same magisterial district * * * and if such magisterial district has one hold over member on said board only one member shall be elected". Notice that the statute requires that the candidate receiving the sufficient number of votes "shall be declared elected". The matter is not left hanging open or dependent on some future event such as the creation of a vacancy in some office not involved in the election.

My examination of the authorities relied on by the majority brings me to the conclusion that they are not controlling as to the question before the Court. They relate only to a situation where a candidate claims the right or title to an office before the official determination of the results of the election. None of them, insofar as I can discover, delay the effect of the election to a day subsequent to the day on which the election was held, but, if they do, I would prefer to be bound by the express requirement of the statute, which was enacted subsequently and applies very specifically to the facts in the instant case.

I think it not amiss to point out, at least for the purpose of indicating the danger of the holding of the ma-

jority, that, according to the stipulation, the board of education held a meeting on August 5, 1958, the very day of the election, "with all members present"; that, though the written resignation of Schultz was dated "August 4, 1958", the resignation was not mentioned to Arnold or Adkins; that on August 8, 1958, the county court sat as a board of canvassers; that, without any explanation thereof, and without having canvassed the votes for members of the board of education, an adjournment was taken until August 11, 1958, and that subsequent to the adjournment the unduly hurried call for a special meeting was made, and the resignation of Schultz obviously hurriedly accepted by the three members of the board then present.

Second: I am in agreement with the majority as to the necessity for reasonable notice to the respective members of the board of education, with reference to the calling of the special meeting, in the circumstances of this case, but I am of the view that the notice given to Arnold and Adkins concerning the time of the holding of the special meeting was not a reasonable notice, and rendered the action taken by the board at that meeting void. The notice was delivered to Arnold and Adkins only two and one half hours before the hour fixed in the notice for the meeting, after they had entered on their duties at the plant where they worked, approximately twenty miles from the place designated for the holding of the meeting. This, in my opinion, was insufficient time for the members to have been released from their work, assuming that that could have been arranged, prepared for the meeting and reached the place designated for the holding thereof. There is no attempt to show that they could have done so, and though the majority admits that the "burden of proving" reasonable notice rests on the party who asserts it, the majority decides "presumably" that they could have done so, and "presumably", that traffic conditions were such that they could have done so, and "presumably" that "ordinary means of transportation" were available. I had believed that interests of the public demanded greater caution and con-

sideration in the transaction of its affairs by public officials, especially by members of a board of education.

Being of the views indicated, I respectfully dissent. I am authorized to say that Judge Browning concurs in the second proposition discussed in this dissent. We would have reversed the trial court.

## ON REHEARING

Submitted September 15, 1959.

On Rehearing September 29, 1959.

HAYMOND, JUDGE:

On the rehearing of this proceeding, heretofore granted upon the petition of the contestant, full consideration has been given to the reasons presented in the written brief filed in his behalf to support his contention that the original decision of this Court, with two Judges dissenting, should be reversed. Careful review and reexamination of that decision and of the reasons upon which it was based justify the conclusion that it was correct and free from error, and that it should not be departed from or altered in any particular. Accordingly, the original opinion and prefixed syllabus points, now reported in 108 S. E. 2d 1, are approved, adhered to and adopted as the decision of this Court in this proceeding, and the judgment of the circuit court, as indicated in the original opinion, is affirmed.

GIVEN, PRESIDENT, dissenting:

For the reasons stated in the dissenting opinion heretofore filed in this case, Judge Browning and I dissent from the majority opinion on the rehearing of this proceeding, and adopt without change or modification the dissenting opinion heretofore reported in 108 S. E. 2d 1, at page 10.