116 S.E.2d 131 (1960)
Russell L. DAUGHERTY, As The Duly Elected, Qualified and Acting Prosecuting Attorney of Cabell County
v.
Harry D. DAY, As A Justice Of The Peace For Gideon District, Cabell County.
No. 12049.
Supreme Court of Appeals of West Virginia.
Submitted and Decided August 5, 1960.
Opinion Filed September 20, 1960.
*132 John W. Daniel, Huntington, for plaintiff in error.
Russell L. Daugherty, Raymond I. Lucas, Huntington, for defendant in error.
GIVEN, Judge.
This appeal was granted from an order entered by the Circuit Court of Cabell County, removing from office the respondent Harry D. Day, justice of the peace of Gideon District, Cabell County, to which office he had been elected and qualified. The proceeding was prosecuted by Russell L. Daugherty, prosecuting attorney of Cabell County, pursuant to provisions of Code, 6-6-7. The appeal was heard on the original record, the petitions for the appeal, and the briefs and oral arguments of the respective parties. An order was entered by this Court on August 5, 1960, reversing the order appealed from, and the proceeding was remanded with directions that respondent be reinstated in the office from which he had been removed. This opinion attempts to state the reasons impelling the entry of the order.
The petition for removal contained eight specifications. A demurrer was sustained as to specifications Nos. 2, 6, 7 and 8. The prosecuting attorney offered no evidence in support of the allegations contained in *133 specification No. 4. Specification No. 1 contained several charges, but a demurrer thereto was sustained as to each charge except the charge that the respondent "procured a bondsman to be surety for one Erwin Huff and charging the sum of Ten Dollars ($10.00) to be paid said defendant for his services in procuring said bondsman". The issue as to specification No. 1, as limited by the trial court, was "whether or not the defendant charged and collected a fee of $10.00 for procuring a surety on a bond for the release of someone that was being tried by him and before him".
The summary effect of the charge made by specification No. 3 was that the respondent issued a warrant for the arrest of Floyd McConnell, on an information sworn to by McConnell's mother, charging him with appearing "in a public place in an intoxicated condition", and after the arrest and incarceration of McConnell in the Huntington city jail by the Huntington city police, respondent escorted McConnell from the city jail, in Gideon District, to the Cabell County jail in Kyle District, and there tried him on the charge contained in the warrant. The issue as to specification No. 3, as stated by the trial court, and as agreed to by the prosecuting attorney, was: "I take it that that specification is open for proof as to acts done by the defendant outside of Gideon District and sentencing a man without either a plea of guilty or trial and conviction".
Specification No. 5 charged that respondent issued three warrants for the arrest of Curtis Pulley; that Pulley, after hearing of the issuance of the warrants, voluntarily went to the office of respondent for the purpose of making "necessary defense thereto"; that after being informed of the nature of the charges contained in the warrants, and after Pulley informed respondent that he was not guilty, respondent directed him to see Roy Ellis, Jr. as to signing an appearance bond and fixed a day for trial; and that he was "finally informed by the said Harry D. Day that he, the said Curtis Pulley was to be back in the office of the said Harry D. Day on Saturday, the 19th day of September, 1959, before noon of that day with the sum of $26.00 to pay the said Harry D. Day", or be sent to jail. The issue as stated in the opinion of the trial judge and as considered and heard by him was, "I would consider the ordering of Pulley to return with $26.00, or he would be sent to jail, to be improper, without a plea of guilty or a trial and conviction if such be the case. On this point I would overrule the demurrer and leave it to proof upon this point".
Though the opinion of the trial court on the merits of the case does not point out which of the charges against respondent was sustained by proof, he concluded: "* * * from the facts proved or admitted that the conduct of the Respondent is not in keeping with the proper conduct required or expected of one in the business of administering justice. Acting in the dual capacity of constable and justice cannot be countenanced. Trying prisoners, if in fact they were tried, inside prison walls, filling out commitments outside his own district, acting as agent in the procurement of bond for persons tried or to be tried before him, and making the financial arrangements therefor, and the taking of personal property as collateral from persons in the jail or from members of such persons' family, are all acts that are reprehensible, when committed by one in the position of administering justice. The fountain heads of justice must be kept clean. They should be above question or reproach. The sole and primary function of the justice of the peace is to administer justice, and to do so honorably".
Code, 6-6-5, provides that "Any state officer * * * may be removed from office, * * * in the manner provided in the following section: (a) when disqualified from holding the office under any provision of the Constitution of this State, or any law now in force, or which may hereafter be enacted, whether such disqualification arose before or after his induction into office; (b) for official misconduct, *134 malfeasance in office, incompetence, neglect of duty, or gross immorality." Section 7 of the same article provides for the removal of any county officer for any cause for which a state officer may be removed under Code, 6-6-5, "or for any of the causes or on any of the grounds provided by any other statute". We are not directed to, there is no contention that, any statutory provision other than those contained in Article 6 of Chapter 6 has any application to the facts of the instant case.
As to the evidence offered in support of specification No. 1, little need be pointed out. There is no testimony to the effect that respondent "charged and collected" a fee of $10 for procuring a surety on a bond for any person, or even that he attempted to do so. Ada Huff, wife of the defendant named in the warrant, who made the arrangements for the surety, was asked: "Did you know of any arrangement where you were to give somebody $50.00 and Squire Day $10.00?"; answered: "Oh, no". True, Mrs. Huff discussed the question of surety with respondent and left with him certain personal property, over his protest as he testified, as security for the person who was to sign the bond as surety for the appearance of the person accused in the warrant, but such facts, even if cause for removal from office, were not significantly pertinent to the issue resulting from the charges made in specification No. 1.
As above pointed out, the only substantial questions raised by specification No. 3 related to whether respondent tried McConnell outside of Gideon District, respondent's official district, or whether respondent imposed a sentence on McConnell without affording him a trial. The evidence, we think, conclusively shows that respondent went to the city jail in Gideon District, had the prisoner removed to the "corridor of the basement of the city jail", and there informed him of the nature of the charge, to which a plea of guilty was made by McConnell, whereupon sentence was imposed. Thereafter, respondent "escorted" McConnell and another prisoner, who had been tried at the same time and place by respondent, to the county jail, something like a block from the city jail but in Kyle District. After reaching the county jail respondent executed commitment papers for McConnell and the other prisoner, and delivered them to the county jailer. It may be pertinent to note that McConnell had been committed to a mental hospital three times, and had been convicted approximately seventy times of public intoxication within a period of ten years.
Respondent testified to the effect, which was not denied, in relation to the reason he escorted the prisoners to the county jail, that his "constable refuses to do any kind of work of that sort", and that the sheriff's office "reluctantly told me that they couldn't", they had too much of their own work to take care of to handle any such work, and that he went to the city jail only on such occasions as "I have nobody to bring them up to my office".
We think it clearly established that respondent afforded McConnell an opportunity to plead, and received a plea of guilty at the city jail, in Gideon District, and then imposed the sentence for which he was confined in the county jail. Certainly the evidence does not preponderate against that conclusion. There is no indication that McConnell asked for or was in any sense denied any further hearing. Though a justice of the peace may not "hear or determine" cases in a district other than the one for which he was elected, and may be prohibited from attempting to do so, Johnston v. Hunter, 50 W.Va. 52, 40 S.E. 448, he is a county officer, State ex rel. Ralich v. Millsop, 138 W.Va. 599, 76 S.E. 2d 737, and his jurisdiction, civil and criminal, is co-extensive with the county in which his district is situated. Code, 50-2-1; Code, 50-18-1, as amended. Perhaps there is no clear or statutory justification *135 for the actions of respondent in taking the plea at the city jail, in removing McConnell and the other prisoner to the county jail, or in filling out the commitment papers outside his own district. While such actions may be entirely unjustified in some circumstances, we think, in the circumstances clearly established in the instant proceeding, they are not of such nature as to warrant the removal of respondent from office. Any such action on the part of respondent is not specifically made ground for removal from office by provisions of Code, 6-6-1 et seq., and it may be seriously doubted whether such actions constituted causes for removal from office within the meaning of the provisions of that article, at least where no "official misconduct" or other evil practice in connection therewith is established by proper proof. See Layne v. Hayes, 141 W.Va. 289, 90 S.E.2d 270; Alexander v. Ritchie, 132 W.Va. 865, 53 S.E.2d 735; Arbogast v. Shields, 123 W.Va. 167, 14 S.E.2d 4; Fisher v. Jackson, 107 W.Va. 138, 147 S.E. 541; Kesling v. Moore and Cain, 102 W.Va. 251, 135 S.E. 246. As indicated by certain of the cases just cited, where a statute provides that an officer should be removed from office for a certain cause, no wilful misconduct need be established by proof. See also Swim v. Leeber, W.Va., 105 S.E. 2d 136, 137; State ex rel. Thompson v. Morton, 140 W.Va. 207, 84 S.E.2d 791; State ex rel. Morrison v. Freeland, 139 W. Va. 327, 81 S.E.2d 685; Jordan v. McCourt, 135 W.Va. 79, 62 S.E.2d 555; Haislip v. White, 124 W.Va. 633, 22 S.E.2d 361. In the instant case, however, we are cited, and have found, no statute which, according to the proof, was specifically violated by respondent. In Kesling v. Moore and Cain, supra, we held [102 W.Va. 251, 135 S.E. 246]: "2. `Misconduct in office' is any unlawful behavior by a public officer in relation to the duties of his office, willful in character."
As to the charge contained in specification No. 5, whether respondent, on appearance of Pulley in the office, ordered "Pulley to return with $26.00, or he would be sent to jail", before any plea or trial, the evidence, we think, clearly preponderates in favor of respondent. Pulley was the only witness who testified in support of the charge, except a witness who attempted to corroborate him on rebuttal, while three witnesses for respondent testified to the effect that Pulley entered a plea of guilty and was fined, including costs, $26, and was given one week by respondent to obtain that amount, because he was a "sick man", with the admonition that if the amount was not paid within the time allowed, he would be sent to jail. Notation on the "jacket" containing the pertinent papers seemingly supports the testimony of witnesses of respondent. It was hardly contended in oral argument of the prosecuting attorney that the charges under this specification were sustained by the proof. It can hardly be contended that the extended leniency, though without express statutory authority, without any indication of any favor or personal gain to respondent, constitutes sufficient ground for the harsh remedy of removal from an elective office.
In Hunt v. Allen, 131 W.Va. 627, 53 S.E.2d 509, 510, a proceeding under Code, 6-6-7, for the removal from office members of a board of education, it was held: "5. The material allegations of a petition under Code, 6-6-7, going to the merits of the charges laid must be proved independent of the allegations of the petition." See Daugherty v. Ellis, 142 W.Va. 340, 97 S.E.2d 33; State ex rel. Rogers v. Board of Education of Lewis County, 125 W.Va. 579, 25 S.E.2d 537; Hamrick v. McCutcheon, 101 W.Va. 485, 133 S.E. 127; Dawson v. Phillips, 78 W.Va. 14, 88 S.E. 456. The pertinent statutory provision of Code, 6-6-7, requires that a person may be removed from office only "upon satisfactory proof of the charges".
In Sharps v. Jones, 100 W.Va. 662, 131 S.E. 463, a proceeding prosecuted for the purpose of removing from office a member of a board of education, we held: "3. While charges for the removal of a *136 public officer need not be set out in the strict form of an indictment, they should be sufficiently explicit to give the defendant notice of what he is required to answer and to enable him to make due preparation to contest and disprove the particular act or acts constituting the alleged offense charged against him." See Shields v. Romine, 122 W.Va. 639, 13 S.E.2d 16; Wysong v. Walden, 120 W.Va. 122, 196 S.E. 573; Painter v. Heironimus, 97 W.Va. 579, 125 S.E. 525.
It seems clear, therefore, from the facts detailed, in the light of the authorities cited, that petitioner failed to prove, by a preponderance of the evidence, at least, any substantial charge alleged in the petition for which removal from office is authorized or warranted, and that the order complained of was necessarily reversed, and the case remanded for the purposes stated in the order heretofore entered.
Reversed and remanded.