JOHN L. SMITH, *et al.*

*v.*

J. T. (TOM) GODBY

(No. 12901)

Submitted January 14, 1970.          Decided April 21, 1970.

Dissenting Opinion April 21, ·1970.

Rehearing Denied June 9, 1970.

*Graziani, O'Brien & Paterno, Thomas P. O'Brien, Jr., Daniel D. Dahill, Philip J. Graziani,* for appellant.

*William L. Jacobs,* for appellees.

HAYMOND, JUDGE:

In this proceeding instituted on May 16, 1969, in the Circuit Court of Logan County, under Section 7, Article 6, Chapter 6, Code, 1931, the petitioners, John L. Smith, Jack Hobbs, James Robert Steele, Paul Childers, Milton Belcher, Ronald Johnson, James Francis, Harold Whitman, Jack Conley, Chester Stapleton and Denver Justice, voters of Logan County, West Virginia, seek to remove from the office of assessor of Logan County, West Virginia, the defendant, J. T. (Tom) Godby, who was duly elected as assessor in November 1968 for a period of four years from January 1, 1969. The defendant had previously been elected to that office in November 1960 and reelected in November 1964, and at the time of the institution of this proceeding he was serving his third consecutive term as Assessor of Logan County.

The petition charges the defendant with official misconduct, malfeasance, incompetence and neglect of duty, and contains five separate charges or specifications.

The allegations in charge 1 of the petition are, in substance, that the defendant knowingly and willfully failed, neglected and refused to comply with the provisions of Section 1, Article 3, Chapter 11, and Section 4, Article 9A, Chapter 18, Code, 1931, as amended, which require the assessors of each county to assess all property in the county at its true and actual value, that the property in Logan County had been appraised pursuant to the provisions of Section 4, Article 9A, Chapter 18, Code, 1931, as amended, before July 1, 1966, and that the defendant refused to comply with that statute for a period of the three consecutive fiscal years, 1967-1968, 1968-1969 and 1969-1970, which resulted in the loss of large sums of tax money to the people of Logan County.

The allegations in charge 2 of the petition are that the defendant knowingly and willfully failed, neglected and refused to assess all property in Logan County in compliance with the provisions of Article X, Section 1, of the Constitution of West Virginia, and did not assess such property uniformly

and in compliance with the Constitution and the statutes of this State.

The allegations in charge 3 of the petition are that the defendant solicited and obtained bribes from certain large taxpayers of Logan County under the guise of endorsements on loans for his personal use, with the promise that in return for such endorsements such taxpayers would receive tax benefits from the defendant.

The allegations in charge 4 of the petition are that the defendant knowingly and willfully failed, neglected and refused to perform his duties as assessor by spending virtually no time at his office or in the performance of his official duties.

The allegations in charge 5 of the petition are that the defendant knowingly and willfully appointed and retained various persons who were incompetent to perform any duties and who possessed no qualification for the function of assessing property, and appointed and retained one employee in his office who was commonly known to be guilty of habitual drunkenness, which resulted in a substantial waste of public moneys of the county.

The foregoing charges were duly entered of record on May 16, 1969; on May 31, 1969 discovery depositions were taken; and on July 3, 1969, the defendant filed his answer, in which he denied the charges in the petition. The case was heard by the circuit court on its merits on September 15, 16, 17, 18 and 22, 1969, and upon the hearing numerous witnesses, including the defendant, testified and an exceedingly large number of exhibits was introduced in evidence.

By final order entered September 24, 1969, the circuit court found that the petitioners sustained the burden of proof as to charge 1 of the petition in that the defendant failed and refused to comply with the requirements of Section 4, Article 9A, Chapter 18, Code, 1931, as amended, and caused the valuation of property for assessment purposes in Logan County to be deficient in less than the required minimum in property classifications 2 and 4; that the petitioners had fully sustained

the burden of proof as to charge 4 of the petition in that the defendant spent virtually no time in his office or in the performance of his official duties; that the petitioners sustained the burden of proof as to charge 5 of the petition in that the defendant knowingly and willfully appointed and retained two persons as deputy assessors who were incompetent and who performed virtually no duties as deputy assessors; that the defendant was not guilty as to charge 2 of the petition but the court made no specific finding against the defendant as to charge 3 of the petition. By its order the court also found the defendant guilty of official misconduct, malfeasance, incompetence and neglect of duty, and ordered the removal of the defendant from the office of assessor of Logan County effective immediately and directed the sheriff of Logan County to take charge of the office of assessor and to take and have possession of the records, papers and property in the office until such time as it should be filled in the manner provided by law.

Shortly after the entry of the foregoing final order, the county court appointed an assessor in the place and stead of the defendant.

From the foregoing judgment this Court granted this appeal upon the application of the defendant on December 8, 1969.

On January 14, 1970, this proceeding was heard by this Court upon the original record and the oral arguments and the briefs of counsel for the respective parties and was submitted for decision.

The defendant assigns numerous procedural errors in the trial of the case but the principal error relied upon for reversal is that the findings of the trial court are clearly wrong and are not supported by the evidence.

The petitioners have filed a motion in this Court to dismiss this appeal as improvidently awarded on the ground that the record of the proceedings of the trial court was not filed in this Court within thirty days from the date of the final judgment of September 24, 1969. The petitioners also cross-

assign as error the failure of the trial court to make a finding against the defendant on charge 3, the allegations of which are that the defendant solicited and obtained bribes from certain large taxpayers of Logan County.

The motion to dismiss is without merit and is overruled. The appellate procedure in this case, which is a statutory proceeding, is governed by specific provisions of Sections 7 and 6, Article 6, Chapter 6, Code, 1931. Section 7 provides, to the extent here pertinent, that an appeal from an order of the circuit court, or a judge in vacation, in removing or refusing to remove any person from office, may be taken to the Supreme Court of Appeals within the same time, in the same manner, and with the same right of suspension, and precedence, as in appeals from orders of the governor removing a State officer. Section 6 provides, to the extent here pertinent, that any officer against whom charges may have been brought, feeling aggrieved by his removal from office by the governor, may present his petition in writing to the Supreme Court of Appeals or a judge in vacation within thirty days after such removal from office by the governor. The application in this proceeding was filed in this Court October 14, 1969. By order entered October 20, 1969, this Court set the matter for hearing on November 4, 1969 on the application, and directed the Clerk of the Circuit Court of Logan County to certify to this Court forthwith all papers, documents, testimony and evidence introduced or offered at the hearing, all of which constitutes the original record in this proceeding. That record was duly certified by the clerk of the circuit court and filed in this Court on November 3, 1969, and this appeal was granted on December 8, 1969.

The foregoing procedure is in accord with that heretofore followed by this Court in a removal proceeding under Article 6, Chapter 6, Code, 1931, and such procedure, contrary to the contention of the petitioners, is not governed by the provisions of Article 5, Chapter 58, Code, 1931. The statutory provisions governing an appeal in a removal proceeding do not specify any time within which the original record shall be filed in this Court and in this instance the record was promptly filed

and the filing of the record on November 3, 1969, before the preliminary hearing on November 4, 1969 on the application, satisfied fully the requirements of this Court under the applicable statutes in perfecting this appeal.

The statute upon which this proceeding is based, Section 7, Article 6, Chapter 6, Code, 1931, to the extent here pertinent, provides that any person holding any county, magisterial district, independent school district, or municipal office, whether elective or appointive, except a judge of a court of record, may be removed by the circuit court of the county in which such officer or person resides, or the judge of such court in vacation, on any of the grounds, or for any of the causes for which a State officer may be removed under Section 5, Article 6, Chapter 6, Code, 1931, or for any of the causes or on any of the grounds provided by any other statute. Among grounds of removal provided by Section 5 are official misconduct, malfeasance in office, incompetence, neglect of duty, or gross immorality. Official misconduct has been defined as any unlawful behavior by a public officer in relation to the duties of his office which is willfull in character and it does not necessarily imply corruption or criminal intent, *Kesling v. Moore*, 102 W.Va. 251, 135 S.E. 246; and malfeasance has been defined as the doing of an act which is positively unlawful or wrongful, or an act which the actor has no legal right to do, or as any wrongful conduct which affects, interrupts or interferes with the performance of official duty. *Daugherty v. Ellis*, 142 W.Va. 340, 97 S.E.2d 33.

Section 1, Article 6, Chapter 6, Code, 1931, states that the term "neglect of duty" or the term "official misconduct," as used in that article, shall include the willfull waste of public funds by any officer or officers, or the appointment by him or them of an incompetent or disqualified person to any office or position and the retention of such person in office, or in the position to which he was appointed, after such incompetency or disqualification is made to appear, when it is in the power of such officer to remove such incompetent or disqualified person; and that the term "incompetent person," as used in that section, shall include any appointee or employee of any

officer or officers, including the county court, municipal bodies or officers, and boards of education, who willfully wastes or misappropriates public funds, or who is guilty of habitual drunkenness, habitual addiction to the use of narcotic drugs, adultery, neglect of duty or gross immorality.

The statutes on which charge 1 is based and which alleges a ground of removal from office on which the petitioners rely, are certain provisions of Section 1, Article 3, Chapter 11, Code, 1931, as amended, and Section 4, Article 9A, Chapter 18, Code, 1931, as amended. Section 1 of Article 3 provides that "Any assessor who knowingly fails, neglects or refuses to assess all the property of his county", as provided in that section, "shall be guilty of malfeasance in office, * * * , and upon conviction, shall be removed from office." Section 4 of Article 9A contains, among others, these provisions: "The tax commissioner shall make or cause to be made an appraisal in the several counties of the State of all nonutility real property and of all nonutility personal property which shall be based upon true and actual value as set forth in article three, chapter eleven of this Code. * * * . Beginning with the fiscal year one thousand nine hundred sixty and for each year thereafter until the full survey is so completed and delivered in a county, the assessed value in each of the four classes of property in such county shall be not less than fifty per cent nor more than one hundred per cent of the appraised valuation of each said class of property as determined by the last previous state-wide report of the tax commissioner: * * * " ; and "Whenever in any year a county assessor and/or county court shall fail or refuse to comply with the provisions of this section in setting the valuations of property for assessment purposes in any class or classes of property in the county, the State tax commissioner shall review the valuations for assessment purposes made by the county assessor and the county court and shall direct the county assessor and county court to make such corrections in the valuations as may be necessary so that they shall comply with the requirements of chapter eleven and of this section and the tax commissioner shall enter the county and fix the assessments at the required ratios. Refusal of the assessor and/or the county court to make

such corrections shall constitute grounds for removal from office."

In relation to charge 1 the evidence shows clearly, and the defendant admits, that the appraised valuations of the four classes of property were certified to him by the State Tax Commissioner for the fiscal years July 1, 1966 to June 30, 1967; July 1, 1967 to June 30, 1968; and July 1, 1968 to June 30, 1969; that for the fiscal year beginning July 1, 1966 the assessment was delayed and returned to Charleston with the State appraisal cards due, to some extent, to the redistricting of the magisterial districts in Logan County which occurred in April 1966 and that for the fiscal year July 1, 1968 to June 30, 1969, according to a letter dated March 17, 1969 from the State Tax Commissioner to the County Court of Logan County and the defendant as assessor the assessed valuations for property class 2 and property class 4 were 48.7 per cent and 46.5 per cent instead of 50 per cent of the appraised valuation for each of those classes, that the assessed valuation deficiency for property class 2 was $369,100 and for property class 4 was $892,572 but that the assessed valuation for property class 1 was 68.7 per cent and for property class 3 was 54.0 per cent and in those two classes the assessed valuations were in excess of the 50 per cent requirement. The defendant testified that he was surprised to have that information in the March 17 letter of the State tax commissioner, that he believed that he had complied with the 50 per cent requirement in property class 2 and property class 4, and that the deficiency resulted, in part, from numerous transfers which he made from property class 2 to property class 4 and some transfers from property class 4 to property class 2. The testimony shows that at the time of the institution of this proceeding, he was engaged in an effort to raise the valuations in all property classes to, or in excess of, the 50 per cent requirement for the fiscal year beginning July 1, 1969, and that he discontinued his efforts in that respect because of the institution of the present removal proceeding.

The noncompliance of the defendant with the minimum valuation requirements of the statute for the fiscal years

beginning July 1, 1966 and July 1, 1967 was admissible in evidence to show a general course or pattern of conduct, but it does not constitute ground for his removal from office.

Though the decisions in the various jurisdictions are in conflict as to whether acts during a prior term constitute ground for removal of an officer, the rule supported by the weight of authority is that, in general, offenses committed or acts done by a public officer during a previous term of office are not cause for removal from office in the absence of disqualification to hold office in the future or additional penalty imposed by law upon the person removed from office. 67 C.J.S., *Officers,* Section 60c. The text in 43 AM. JUR., *Public Officers,* Section 202, contains this language: "According to many authorities, a public officer may not be removed or impeached for acts committed before his entry into office, including acts during a prior term of the same office, or acts of misconduct in another office." In *Wysong v. Walden,* 120 W.Va. 122, 52 S.E.2d 392, this Court, considering the statement that a public officer is not subject to removal for acts committed before his entry into office, recognized that as a general proposition, that statement was a correct statement of the law. See also *Jacobs v. Parham,* 175 Ark. 86, 298 S.W. 483; *Barham v. McCollum,* 174 Ark. 1179, 298 S.W. 484; *State ex rel. Boynton v. Jackson,* 139 Kan. 744, 33 P.2d 118, 100 A.L.R. 1394; *McMillen v. Diehl,* 128 Ohio St. 212, 190 N.E. 567; *State v. Blake,* 138 Okla. 241, 280 P. 833; *State v. Scott,* 35 Wyo. 108, 247 P. 699. As the fiscal year July 1, 1968 to June 30, 1969, however, extended into the current term of office of the defendant, his noncompliance with the requirement to assess all of the four classes of property to the extent of the minimum valuation of 50 per cent may be considered in determining whether such conduct, under the statute, constitutes a ground of removal.

The language of the statute, Section 4, Article 9A, Chapter 18, Code, 1931, as amended, is *"Refusal* of the assessor and/or the county court to make such corrections shall constitute grounds for removal from office." (Emphasis supplied.) The same statute provides that whenever in any year a county

assessor and/or county court shall *fail* or *refuse* to comply with the provisions of the section in setting the valuations of property for assessment purposes in any class or classes of property in the county, the State tax commissioner shall review the valuations for assessment purposes made by the county assessor and the county court and shall direct the county assessor and the county court to make such corrections in the valuations as may be necessary so that they shall comply with the requirements of the statute and shall enter the county and fix the assessments at the required ratios. It is significant that the statute uses the words "fail" or "refuse" in the disjunctive and manifestly attaches a different meaning to each word. Obviously they are not synonyms. The word "refuse," as used in the statute, implies an intentional or deliberate failure or unwillingness to discharge the duty imposed as distinguished from "failure" through inattention, inaction or inadvertence in the discharge of such duty.

The remedy for the removal from office of a public officer is a drastic remedy and the statutory provision prescribing the grounds for removal is given a strict construction. 43 Am. Jur., *Public Officers*, Section 194. Substantially the same statement is contained in the opinion of this Court in *Dials v. Blair*, 144 W.Va. 764, 111 S.E.2d 17. The removal statute, Section 7, Article 6, Chapter 6, Code, 1931, expressly requires that to remove a person from office the charge against him must be established by satisfactory proof. In *Daugherty v. Day*, 145 W.Va. 592, 116 S.E.2d 131, the opinion states: "The pertinent statutory provision of Code, 6-6-7, requires that a person may be removed from office only 'upon satisfactory proof of the charges.'" It has been said that the evidence to sustain a removal in a proceeding to remove a public officer must be clear and convincing. See *McMillen v. Diehl*, 128 Ohio St. 212, 190 N.E. 567. Though the evidence shows that the defendant failed to comply fully with the requirement that each class of property be valued at a minimum of 50 per cent of its appraised value, it is clear that his assessment as to property class 2 of 48.7 per cent, which was less than 2 per cent under the 50 per cent minimum requirement, his assessment as to property class 4 of 46.5 per cent, which was

less than 4 per cent under the 50 per cent minimum require-
ment, and his assessment as to property class 1 of 66.7 per cent
and as to property class 3 of 54.0 per cent, constituted a
substantial compliance, and the statute does not make failure
to comply a ground of removal from office. Though he failed
to meet the 50 per cent requirement in two of the four
classes, he did not, within the meaning of the statute, refuse
to do so and his failure in the existing circumstances was not
a refusal to satisfy the requirement of the statute. In conse-
quence, the evidence is not sufficient to establish the ground
for removal provided by the statute and alleged in charge 1
of the petition or to amount to satisfactory proof of that
charge.

With respect to charge 4 of the petition that the defendant
knowingly and willfully failed, neglected and refused to
perform his duties as assessor by spending virtually no time
at his office or in the performance of his official duties, though
some persons testified that on occasions they were unable to
locate the defendant at his office or to find him elsewhere
in connection with matters pertaining to his office, that there
were some days that he did not spend any time in his office,
and that he was frequently absent from his office, there is
ample evidence that he spent from two hours to a half day at
his office almost daily, that when he was not in the office he
was engaged in the field in the performance of his duties as
assessor, that when he was not in the office he was in touch
with his chief deputy and could be reached by her at all
times, and that he spent considerable time at night in the
office in preparing notes and instructions for use by his
deputies in connection with their assessment work in the
office and in the field. The Assessor, in the performance of
his duties, is not required to be constantly in the office and
the proper performance of his duties requires him to spend
some of his time in assessment work outside his office. The
defendant employed and maintained a qualified office force
in charge of a capable chief deputy and according to the
uncontroverted testimony of the chief deputy the defendant
was available at all times for the performance of the duties
of his office and whenever his presence at his office was

needed. There is no evidence that his absence from his office at any time resulted in neglect or failure to perform the duties of his office. The evidence in support of this charge is insufficient to establish official misconduct, neglect of duty, or incompetence upon the part of the defendant or to justify his removal from office; and the allegations of charge 4 of the petition are not sustained or established by satisfactory proof.

As to charge 5 of the petition that the defendant knowingly and willfully appointed and retained various persons who were incompetent to perform any duties and possessed no qualification for the function of assessing property, and appointed and retained at least one employee in his office who was commonly known to be guilty of habitual drunkenness which resulted in substantial waste of public moneys of the county, the evidence is that at the instance of a member of the county court the defendant, in January 1969, appointed Ray Porter, who was a brother of a member of the county court, as deputy assessor and that Porter served for a period of only one month and then quit that employment. The evidence shows that Porter was a heavy drinker, that he had been arrested numerous times for drunkenness and that his automobile license had been revoked for that reason, but the evidence also shows that during the time he was employed by the defendant he did not engage in drinking intoxicating liquors and was not at any time intoxicated. The defendant cautioned him against such conduct and exacted a promise from him that he would not engage in drinking intoxicants before the defendant appointed him as deputy assessor, and it appears that Porter kept that promise. During the short period of time that Porter served as a deputy he performed the usual field services of a deputy assessor and engaged in that work daily and did "fairly well."

In January 1969, the defendant also appointed, at the instance of the same member of the county court, Roby Williams as a deputy assessor and Williams served as such for a period of approximately three months during January, February and April of 1969. Though Williams had no prior experience as an assessor or in assessment matters, he performed field work with instructions from the defendant, engaged in that work

each working day and did "pretty good" as a field deputy assessor. Each of these deputies during the period served received only the usual salary of a deputy assessor engaged in field work which appears to be approximately $250.00 per month, and though each submitted an expense account no expenses were allowed or paid to either of them. There is no evidence that the appointment of either Porter or Williams resulted in any waste of the public moneys of the county. Both appointments appear to have been approved by the County Court of Logan County. The appointments of Porter and Williams were temporary, not permanent, and they were made at a time when the defendant thought there might be vacancies in the positions of some of his deputies if he did not appoint Porter and Williams. The evidence does not show that Porter or Williams or any other deputy employed by the defendant failed to perform the ordinary duties of a deputy assessor. Their employment did not disrupt or adversely affect the performance of any of the duties required of the defendant as Assessor and did not constitute incompetence upon the part of the defendant or constitute grounds for his removal from office.

The evidence fails to sustain the allegations in charge 3 of the petition that the defendant solicited and obtained bribes from certain large taxpayers of Logan County, and the circuit court, instead of making no specific finding on this charge, should have found in favor of the defendant and dismissed the charge for lack of proof.

The evidence fails to sustain the allegations of charge 2 of the petition that the defendant knowingly and willfully failed, neglected and refused to assess all the property in Logan County in compliance with the provisions of Article X, Section 1, of the Constitution of this State and did not assess such property uniformly and in compliance with the Constitution and the statutes of this State, and the circuit court properly found the defendant not guilty of that charge.

The findings of the circuit court against the defendant on charges 1, 4 and 5 of the petition are not supported by the evidence and are clearly wrong. For that reason the finding as to each of those charges is reversed and set aside. This

Court has many times held that when the finding of a trial court in a case tried by it in lieu of a jury is against the preponderance of the evidence, is not supported by the evidence, or is plainly wrong, such finding will be reversed and set aside by this Court upon appellate review. *Bluefield Supply Company v. Frankel's Appliances, Inc.*, 149 W.Va. 622, 142 S.E.2d 898, and the many cases cited in the opinion in that case.

The final judgment of the Circuit Court of Logan County is reversed and set aside and this case is remanded to that court with directions that it be dismissed; and upon dismissal of this proceeding the defendant will be entitled forthwith to be restored to the office of Assessor of Logan County.

> *Reversed and remanded*
> *with directions that this*
> *proceeding be dismissed.*

CALHOUN, JUDGE, dissenting:

Respectfully, I dissent.

I would not assert with assurance that the proposition stated in the first point of the syllabus represents a general rule or even the weight of authority. In an annotation of the subject in 17 A.L.R. 279, the following statement appears at page 285: " * * * there is an almost equal number of cases to the contrary effect, that such misconduct [in a prior term of office] may constitute a ground for removal or impeachment." See also Annot., 138 A.L.R. 753 at 758, et seq. In connection with a discussion of the conflict of authorities on the question, the following statement appears in 43 AM. JUR., *Public Officers*, Section 202, page 45: "However, although acts preceding election are not grounds for removal, they may be considered in so far as they are connected with or bear on the officer's general course of conduct during the current term, for the limited purpose of inquiring into his motive and intent as to the acts and omissions charged to him during his second term." Subsequently in the same section, at page 46, the following statement appears: "According to some authorities, the object

of the statute relating to removal from office is to purge the public service of an unfit officer, and such unfitness may arise from conduct in an office held continuously, although during the term of an earlier election. Accordingly, it is held that the single circumstance of an election does not prevent inquiry into acts during a prior term and removal from office because thereof." The passing reference to this question in *Wysong v. Walden,* 120 W.Va. 122, 127, 52 S.E.2d 392, 396, is pure dictum. Admitting that misconduct of the officer during one or more of his prior successive terms of office may not alone warrant removal from the office currently held, I believe it does not follow that such prior misconduct has no proper relevance to prove misconduct during the current term.

Proceedings for removal of public officers under the state involved in this case are not criminal or penal in character. *Daugherty v. Ellis,* 142 W.Va. 340, 352, 97 S.E.2d 33, 40; *Dawson v. Phillips,* 78 W.Va. 14, 88 S.E. 456. "Misconduct" does not necessarily imply corruption or criminal intent. "Manifestly the purpose of the statute was to protect the public." *Kesling v. Moore,* 102 W.Va. 251, 258, 135 S.E. 246, 249.

After having heard extensive testimony of witnesses, the judge of the circuit court, sitting in lieu of a jury, made the following findings of fact in the judgment order:

> "*Number One.* The petitioners have fully sustained the burden of proof of the charges contained in Paragraph Number 1 of their said petition, in that the defendant has failed and refused to comply with the terms and provisions of the West Virginia Code contained in Chapter 18, Article 9(a), Section Four, in that the defendant has caused the valuations of property for assessment purposes in Logan County to be deficient and less than the required minimums in classes 2 and 4 and this has resulted in losses of large sums of tax money to the people of Logan County, West Virginia.
>
> \* \* \*
>
> "*Number Four.* The petitioners have sustained the burden of proof of the charges contained in Paragraph Number 4 of their said petition, in that the

assessor, although complaining and attempting to justify his refusal to comply with the Reappraisal Statute on the basis of insufficient budget and lack of employees, spent virtually no time in his office or in the performance of his official duties and functions.

"*Number Five.* The petitioners have fully sustained the burden of proof of the charges contained in paragraph Number 5 of their said petition, in that the said defendant has knowingly and wilfully appointed and retained at least two persons as deputy assessors who were incompetent and who performed virtually no duties as deputy assessors. One of these persons, one Ray Porter, is and was well known to the defendant to be a person addicted to the excessive use of intoxicating beverages to the extent that he is and was a habitual drunkard. The other, one Roby Williams, who was shown by other evidence and who also demonstrated by his own testimony that he performed virtually no duties in return for the salaries paid to him by virtue of his appointment and retention by said defendant, all of which has resulted in a substantial wasting of public monies.

"In view of the foregoing, it is the judgment of this Court that the petitioners have sustained the burden of proof and have shown by satisfactory evidence that the said defendant, the said J. T. (Tom) Godby is and has been guilty of official misconduct, malfeasance, incompetence, and neglect of duty. * * * ."

In proceedings of this character for removal of public officials, this Court has heretofore adhered to the general rule that the findings and judgment of the trial court in removing one from public office will not be reversed unless in that respect the findings and judgment of the trial court are clearly wrong.

*Moore v. Strickling,* 46 W.Va. 515, 33 S.E. 274, involved an appeal from the action of a circuit court in removing a prosecuting attorney from office. In affirming the judgment of the circuit court, this Court made the following statement in the fifth point of the syllabus: "The credibility of witnesses and the weight of evidence are for the trial court, and the Appellate Court will not disturb its finding, unless plainly

contrary to the preponderance of the evidence." In the opinion of the same case (46 W.Va. at 519, 33 S.E. at 276), the Court made the following statement: "Public offices belong to the people, and are to be both conferred and taken away according to their will and appointment, and a person who accepts a public office does so subject to all the constitutional and legislative provisions in relation thereto." In the body of the same opinion (46 W.Va. at 526, 33 S.E. at 278), the Court stated: "In this, as in all similar cases, the circuit judge saw the witnesses face to face, beheld their demeanor on the witness stand, and heard them testify. On him devolves the duty of determining the credibility of witnesses and weighing their testimony; and, unless the evidence *is* credited [certified] to this Court plainly preponderates against his finding, it will not be disturbed." Still later in the opinion (46 W.Va. at 526, 33 S.E. at 278), the Court stated: "While it is a harsh measure to remove an incumbent from office, yet he accepted the office on condition of upright behavior, as required in the constitution and laws, and he has no one to blame but himself. If he has been unjustly traduced, there remains for him an appeal to the people, who are quick to remedy such injustice, and readily pardon those whose upright deportment evinces a sincere departure from the follies of youth."

*Daugherty v. Ellis,* 142 W.Va. 340, 97 S.E.2d 33, involved an appeal from the judgment of a circuit court in removing from office a commissioner of the county court pursuant to the statute involved in the instant case. In affirming the judgment of the circuit court, this Court made the following statement in the sixth point of the syllabus: "The finding of a trial court upon facts submitted to it in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by an appellate court unless the evidence plainly and decidedly preponderates against such finding." In the body of the opinion (142 W.Va. at 357-58, 97 S.E.2d at 42-43), the Court stated: "To establish malfeasance in office it is not necessary to show a specific intent to defraud, or that the act is criminal or corrupt in character."

*Edwards v. Hylbert,* 146 W.Va. 1, 118 S.E.2d 347, involved an appeal from the action of the Circuit Court of Wood County, sitting in lieu of a jury, in removing from office the mayor and certain members of the municipal council of the City of Parkersburg. In affirming the action of the trial court, this Court, as the third point of the syllabus, quoted and applied the sixth point of the syllabus of *Daugherty v. Ellis, supra,* which was previously quoted in this dissenting opinion and which again applied the well-settled legal principle concerning the finding of a trial court on facts submitted to it in lieu of a jury. In the body of the *Edwards* opinion (146 W.Va. at 20, 118 S.E.2d at 357), the Court stated: "The trial court, sitting in lieu of a jury, heard the testimony orally at the bar of the court. The findings of fact made by the trial court are, therefore, entitled to the same weight as the verdict of a jury. *Daugherty v. Ellis,* 142 W.Va. 340, 97 S.E.2d 33. We can not say that such findings are unwarranted, * * * ."

It is true that the procedure for removal of one from public office is a "drastic remedy". I do not subscribe to the statement in the majority opinion and in the second point of the syllabus that the statutory provision prescribing the grounds should be given a strict construction. For that proposition the Court cites a sentence from 43 AM. JUR., *Public Officers,* Section 194. Two appellate court decisions are there cited for that proposition. I prefer to emphasize the fact that this is not à criminal or penal statute and to express my view that statutes in this category are enacted for salutory, beneficent purposes, to promote the public interest, and that such statutes should be reasonably and sensibly applied. I prefer to rely on the following statement from the same volume, 43 AM. JUR., *Public Officers,* Section 226, at page 60: "It has been observed that the statute is remedial rather than penal in nature, and that the purpose is not to punish the officer, but to improve the public service."

I recognize, of course, that the findings and judgments of trial courts in cases submitted to them in lieu of juries are not sacrosanct and that it is a part of the function of this Court

to review such findings and judgments. I would, however, apply faithfully in this case our frequently reiterated rule which accords peculiar weight to the judgment of a trial court in a case such as this.

I respect the trial judge for his obvious exercise of courage, conscience and judicial ability by which he was motivated. I agree fully with his findings and judgment. By no means could I agree with the majority opinion in holding that his findings are not supported by the evidence, or against the preponderance of the evidence or plainly wrong. He is on the scene, he heard the testimony, with the consequent advantage of observing the various witnesses, their manner of testifying and their demeanor on the witness stand. I am unwilling, in the circumstances, to substitute my judgment for his.

In this day in which, in all levels of government throughout the land, the public confidence in public officials is sorely tested, I admire the courage of the trial judge in his effort to bolster and to restore the sagging confidence of the people in their representatives in government. A case of this character is, of course, a serious one from the standpoint of the individual public official, but such a case is, I believe, far more serious from the standpoint of the people he serves. See *Green v. Jones*, 144 W.Va. 276, 286-87, 108 S.E.2d 1, 8. In all cases, courts should constantly bear in mind that the public, as well as the individual, is entitled to a fair trial. Events in recent years throughout the land demonstrate a need for holding public officials to a fairly high degree of accountability to the public in the performance of their official functions and duties.

I would affirm the judgment of the Circuit Court of Logan County.