## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**George Papandreas, et al.,**
**Petitioners Below, Petitioners**

**vs)  No. 16-0619** (Monongalia County 15-C-650)

**William Kawecki, Jennifer Selin,**
**Nancy Ganz, and Marti Shamberger,**
**Respondents Below, Respondents**

**FILED**

**January 27, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners, George Papandreas, et al., by counsel Mark A. Kepple, appeal the June 10, 2016, "Order Denying Petition to Remove Pursuant to W.Va. Code § 6-6-7," entered by an appointed three-judge panel sitting in the Circuit Court of Monongalia County. Respondents William Kawecki, Jennifer Selin, Nancy Ganz, and Marti Shamberger, by counsel Lonnie C. Simmons, filed a response. Petitioners filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.[1]

### Factual and Procedural Background

This appeal involves a petition to remove four members of the City Council of the City of Morgantown, West Virginia, filed pursuant to West Virginia Code § 6-6-7.[2] Specifically, on

---

[1] On December 14, 2016, respondents filed a motion for an expedited ruling with this Court. Petitioners filed a response objecting to the motion inasmuch as an expedited ruling might deprive them of the opportunity for oral argument. The issuance of this Memorandum Decision renders respondents' motion moot.

[2] West Virginia Code § 6-6-7 governs the procedure for the removal of county, school district, and municipal officers. The statute was recently amended in 2016. However, the statute as amended in 1985 is applicable to the present case. West Virginia Code § 6-6-7(a) [1985] provided, in relevant part, as follows:

(continued . . .)

1

October 8, 2015, Petitioner George Papandreas,[3] and other voters and residents of the City of Morgantown, filed a petition to remove Respondents William Kawecki, Jennifer Selin, Nancy Ganz, and Marti Shamberger from office. The petition centered on the following three alleged instances of misconduct by one or more of respondents: (1) a March 22, 2015, email sent to over 200 recipients (including over 50 public employees) by Respondent Kawecki, in which he solicited campaign contributions or volunteers for himself and/or the Morgantown Together Political Action Committee ("PAC")[4] without including a disclaimer for public employees to disregard; (2) improper interference with efforts to redistrict Wards Four and Seven in the City of Morgantown; and (3) interference with the administration of the City, in violation of the City of Morgantown Charter, by contacting City employees directly regarding various aspects of City operations. On or about December 1, 2015, Petitioner Papandreas filed a motion to amend the petition to also allege that Respondent Selin failed to report the distribution of a laminated sheet listing write-in candidates that was discovered at the polling place where she votes.

On November 2, 2015, an order was entered in Circuit Court of Monongalia County, entered that found that the petition conformed to the requirements of West Virginia Code § 6-6-7(b) [1985] and requested the appointment of a three-judge panel to preside over the matter. Thereafter, then Chief Justice Margaret L. Workman appointed the Honorable John Lewis Marks, Jr., the Honorable Richard A. Facemire, and the Honorable David H. Wilmoth, to comprise the three-judge panel ("Panel") and to rule upon the removal petition.

---

Any person holding any county, school district or municipal office . . . may be removed from such office in the manner provided in this section for official misconduct, malfeasance in office, incompetence, neglect of duty or gross immorality or for any of the causes or on any of the grounds provided by any other statute.

[3] In their brief to this Court, respondents object to the style of the case as used in this Court's scheduling order, as well as to Petitioner Papandreas's characterization that he is the sole petitioner in this matter. Respondents state that Petitioner Papandreas failed to establish below that he was a Morgantown resident and a voter in the last election when he signed the petition, as required by West Virginia Code § 6-6-7(b)(2) [1985]. Respondents contend that the only legitimate petitioners in this matter are Ronald Bane, Wesley Nugent, and Jay Redmond, who are the other three members of the Morgantown City Council, and who, by virtue of their elected position, had the authority to sign and prosecute the removal petition. These issues do not appear to have been addressed by the three-judge panel below, and additionally, their resolution on appeal would not alter the outcome of the removal petition. Accordingly, we decline to address them in this decision.

[4] According to the email, Morgantown Together PAC endorsed all four respondents as candidates for City Council.

2

The Panel conducted an evidentiary hearing on February 19, 2016.[5] The Panel heard testimony from Petitioner Papandreas; First Sargent Scott Carl; Former Public Works Department Assistant Director Lyle Matthews; City employee Glen Kelly; Morgantown City Manager Jeff Mikorski; Heather Carl; Linda Tucker, Office of the City Clerk; Wards and Boundary Commission co-chair Guy Panrell; Damien Davis; Roger Banks; Don West; and Wesley Nugent. Respondents were represented by counsel, but were not present in person for the hearing.

With respect to the March 22, 2015, email sent by Respondent Kawecki, the Panel found that he had been subsequently advised by the legal department of the West Virginia Secretary of State's Office that the communication was improper. Specifically, the Secretary of State's Assistant General Counsel, Timothy G. Leach, wrote to Respondent Kawecki and noted that Respondent Kawecki had expressed contrition for what he admitted was an unintended violation. Mr. Leach further noted that, given the minimal objections received from the public employees who received the email, the Office of the Secretary of State preferred to treat the matter as an "educational experience" for Respondent Kawecki and other officials, rather than seek prosecution. Further, the Panel found that Respondent Kawecki had apologized in the press for the email and admitted that sending it was a mistake. The Panel found that "the March 22, 2015, Kawecki email violation is *de minimis* and does not warrant the draconian sanction of the Respondents' removal from office."

The Panel next considered the allegation that respondents improperly influenced redistricting efforts for the Fourth and Seventh Wards, which were represented by Respondents Selin and Ganz, respectively. With respect to proposed adjustments to the City's wards, Section 7.05(d) of the Morgantown City Charter provides as follows:

> (d)    Specifications. Except as otherwise provided in Section 10.05, the ward boundaries shall be adjusted from time to time in accordance with the following specifications:
>
> (1) Each ward shall be formed of contiguous territory, and its boundary lines shall follow the precinct lines and the center lines of streets wherever practicable.
>
> (2) Each ward shall contain as nearly as practicable the same number of qualified voters, determined from the registration for the last statewide general election. This specification shall not be construed to require the sacrifice of compactness of wards for the sake of achieving quality of numbers of registered

---

[5] Through their counsel, respondents moved to dismiss the petition inasmuch it alleged conduct that took place in respondents' prior terms of office. The Panel noted that the parties "strenuously argued" this issue; however, despite respondents' objection, the Panel allowed petitioners to present their evidence. The Panel concluded that the issue need not be addressed because "the particular acts complained of [by petitioners] do not rise to the level to warrant Respondents' removal from office regardless of when those acts occurred."

3

voters among the seven wards of the City. The report shall include a map and description of the boundaries of each of the wards.

Sections 7.05(e) and (f) permit the Council to approve or disapprove the Ward Boundary Commission's report/recommended plan and to introduce an alternate plan of its own in the event that it disapproves of the Commission's plan.

The crux of petitioners' allegation appears to be that, in 2014, the City's Wards and Boundary Commission proposed redistricting the Fourth and Seventh Wards in such a way that would decrease the disparity in the number of voters in each ward, but that would also have put Respondents Selin and Ganz in the same ward, meaning they could not serve together on the Council. Petitioners alleged that respondents rejected that proposal in favor of an alternate proposal that did not achieve the same decrease in voter disparity, but that maintained Respondents Selin's and Ganz's positions on the Council. Morgantown City Council elections are non-partisan and "at-large," meaning that everyone in the City has the right to vote for a council member for each of the City's seven wards.

The Panel heard evidence that the Office of City Clerk requested guidance from the West Virginia Ethics Commission as to whether an affected councilperson could vote on a boundary adjustment that would compromise his or her prospects for re-election. The Ethics Commission responded with an advisory opinion in which it concluded that the Ethics Act did not bar a councilperson from voting under such circumstances. Additionally, the Panel received evidence that, apparently in response to an inquiry from Petitioner Papandreas, Monongalia County Prosecuting Attorney Marcia Ashdown opined, in writing, that petitioners' allegation with respect to the wards and boundary issue did not constitute "malfeasance in office" under West Virginia Code § 6-6-7(b). Accordingly, the Panel stated that it "cannot find that the Respondents' actions as concerns the Wards and Boundary Commission proposal and subsequent voting are unlawful or unethical in any way to warrant removal from office."

The final allegation in the petition was that respondents violated Section 2.05 of the City Charter, which prohibits "interference with administration." The section states, in part, as follows:

> [T]he council or its members shall deal with City officers and employees who are subject to the direction and supervision of the City Manager solely through the Manager, and neither the Council nor its members shall give orders to any such officers or employees, either publicly or privately. Violation of this provision shall constitute grounds for removal from office.

Petitioners alleged that in 2013 and 2014, Respondents Ganz and Shamberger contacted City personnel by email to address parking and street issues, area crime, placement of a residence upon a vacation "house watch" list, and other pertinent matters; that respondents ordered City Manager Mikorski to remove certain emails from a response to a Freedom of Information Act request sent by Petitioner Papandreas' counsel; that Respondent Selin advised City management to selectively enforce the City's "porch couch ban," and prohibited discussion of legal options surrounding the "truck ban" ordinances; that Respondent Shamberger contacted

4

the City's Public Works Department to request snow removal on her street; and that a laminated card listing write-in candidates was found at Respondent Selin's polling place.

The Panel reviewed all of the pertinent email communications, heard testimony regarding the same, and concluded that there was insufficient evidence that respondents acted improperly or that their communications constituted "interference with administration" as contemplated by Section 2.05 of the City Charter.[6] The Panel found that respondents "did nothing that local citizens themselves could not do – contact City personnel and officials to address" City operations. The Panel further found that the emails did not constitute "meddling in another's affairs" or "an obstruction or hindrance" that would keep City employees from performing their duties. With respect to the list of write-in candidates found at Respondent Selin's polling place, the Panel found that, according to the City Council minutes, Respondent Selin denied any involvement in the matter. The Panel further found that the police investigated the matter and exonerated Respondent Selin of any wrongdoing.

By order entered on June 10, 2016, the Panel denied the removal petition. After citing the relevant law regarding removal of public officers, the Panel concluded that the facts were not in dispute and that "Petitioner George Papandreas has failed to prove that the acts rise to the level to justify removing from office officials who have been duly elected by the electorate." Petitioners now appeal to this Court.

<u>Discussion</u>

This Court has held that "[t]he remedy for the removal from office of a public officer is a drastic remedy and the statutory provision prescribing the grounds for removal is given strict construction." Syl. Pt. 2, *Smith v. Godby*, 154 W. Va. 190, 174 S.E.2d 165 (1970). Removal of a public official pursuant to West Virginia Code § 6-6-7 requires that the charge against the official "must be established by satisfactory proof." *Id.* at Syl. Pt. 3. "To warrant removal of an official pursuant to [West Virginia Code § 6-7-7], clear and convincing evidence must be adduced to meet the statutory requirement of satisfactory proof." Syl. Pt. 9, *Evans v. Hutchinson*, 158 W. Va. 359, 214 S.E.2d 453 (1975). We note that the Panel accepted the facts as undisputed, but determined that respondents' actions, in large part, did not rise to the level warranting their removal from their elected offices. In this regard, syllabus point five of *Evans* states as follows:

> [i]n a removal proceeding, a defense predicated upon the De minimus principle is essentially one of fact, the resolution of which by a fact finder would be entitled to great weight by this Court. Hence, where there is conflicting evidence of wrongdoing, and it appears that the trial court chose to give greater weight to the credible evidence concerning the totality of the wrongful activities knowingly conducted, the trial court's finding in such regard will be sustained on appeal.

---

[6] Interestingly, Petitioner Papandreas testified to his belief that "anyone in Morgantown has the ability to contact anyone in the City in any regard that they want to with the exception of seven people," referring to the seven members of the City Council. The Panel rejected this interpretation of the City Charter.

*Id.* at Syl. Pt. 5. Finally, "[q]uestions of law are subject to de novo review." Syl. Pt. 2, in part, *Walker v. W. Virginia Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997). With these standards in mind, we turn to petitioners' arguments on appeal.

On appeal, petitioners raise the following seven assignments of error: (1) the Panel erred by failing to find that respondents violated West Virginia Code § 6-6-7 by failing to appear at the February 19, 2016, hearing; (2) the Panel erred by not holding the Rules of Civil Procedure applicable to West Virginia Code § 6-6-7 proceedings; (3) the Panel erred by refusing to allow petitioners to conduct discovery and depositions, even if the Rules of Civil Procedure do not apply; (4) the Panel erred by failing to find the actions of respondents in past terms to be subject to West Virginia Code § 6-6-7 removal in their current terms; (5) the Panel erred by finding Respondent Kawecki's solicitation of funds to be *de minimis*, and by finding that respondents did not make a sufficient evidentiary showing that would warrant Kawecki's removal; (6) the Panel erred by applying an incorrect standard of law by finding respondent's actions "lawful" and "ethical," and erred by failing to find that respondents committed malfeasance by redistricting Wards Four and Seven in a manner incongruous with City Charter; and (7) the Panel erred in finding that respondents did not interfere with City administration, in violation of the City Charter, which is malfeasance under West Virginia Code § 6-6-7.

First, petitioners claim that respondents violated West Virginia Code § 6-6-7, and presumably should have been removed from office by the Panel, because they did not personally appear at the evidentiary hearing. The record reflects that, prior to the evidentiary hearing, whether respondents intended to voluntarily appear at the hearing was an issue. Despite this fact, as the Panel noted in its order, "[petitioners] did not request [that] subpoenas be issued from the Circuit Clerk to the individual [respondents] to secure their attendance." Inasmuch as petitioners contend that respondents' failure to appear at the hearing constituted an admission of the allegations, this Court has held that petitioners in a removal action must prove their allegations regardless of whether those allegations are denied by answer or not. *See Hunt v. Allen,* 131 W. Va. 627, 629-30, 53 S.E.2d 509, 511 (1948). Therefore, under the facts of the present case, we find no error by the Panel with respect to its handling of respondents' failure to attend the evidentiary hearing.

Petitioners' second and third assignments of error challenge the Panel's determination that the Rules of Civil Procedure do not apply to removal proceedings, and further denying petitioners the opportunity to conduct some form of discovery outside of the requirements of the Rules. As respondents have noted, there are numerous procedural requirements that are unique to removal petitions filed under West Virginia Code § 6-6-7, as compared to a traditional civil action. We also note that throughout the different amendments to our removal statute, the legislature has not expressly indicated that the Rules of Civil Procedure shall govern removal proceedings. However, what is important to our resolution of petitioners' arguments in these two assignments of error is that petitioners fail to explain how the outcome would have been different had the Rules applied or had they been permitted to conduct discovery. Stated another way, because the Panel found that the petitioners' allegations were essentially undisputed, we fail to see what evidence petitioners were deprived from obtaining that would have helped their case. Accordingly, for the purposes of resolving the instant appeal, we need not address the question

of the applicability of the Rules of Civil Procedure or whether petitioners were entitled to otherwise conduct discovery.

Next, petitioners argue that the Panel erred by failing to find that the actions of respondents in past terms were subject to removal in their current terms. In contrast, respondents implicitly argue that the Panel erred by allowing petitioners to present evidence of alleged misconduct from respondents' past terms. Indeed, the Panel did not definitively address the question, despite the respondents filing a motion to dismiss. This Court has held as follows:

> As a general rule offenses committed or acts done by a public officer during a previous term of office are not cause for removal from office in the absence of disqualification to hold office in the future or additional penalty imposed by law upon the person removed from office.

Syl. Pt. 1, *Smith*.

Petitioners argue that the logic behind our holding in *Smith* was that, when the public elects an official, it is said to have forgiven the official's past misconduct. Petitioners contend that this reasoning does not apply where, as in the present case, the term is for only two years. However, as both parties agree, the Panel heard all of the evidence that petitioners sought to introduce despite respondents' motion to dismiss. Therefore, under these facts, there is no need for this Court to address the issue any further.

Petitioners' fifth assignment of error challenges the Panel's findings and conclusions regarding the email sent by Respondent Kawecki. Petitioners argue that the single email was a blatant violation of West Virginia Code §§ 3-8-12(c) and (k), which state as follows:

> (c) A person may not, in any room or building occupied for the discharge of official duties by any officer or employee of the state or a political subdivision of the state, solicit orally or by written communication delivered within the room or building, or in any other manner, any contribution of money or other thing of value for any party or political purpose, from any postmaster or any other officer or employee of the federal government, or officer or employee of the State, or a political subdivision of the State. An officer, agent, clerk or employee of the federal government, or of this state, or any political subdivision of the state, who may have charge or control of any building, office or room, occupied for any official purpose, may not knowingly permit any person to enter any building, office or room, occupied for any official purpose for the purpose of soliciting or receiving any political assessments from, or delivering or giving written solicitations for, or any notice of, any political assessments to, any officer or employee of the state, or a political subdivision of the state.
>
> ***
>
> (k) A person may not solicit any contribution, other than contributions to a campaign for or against a county or local government ballot issue, from any

7

nonelective salaried employee of the state government or of any of its subdivisions: Provided, That in no event may any person acting in a supervisory role solicit a person who is a subordinate employee for any contribution. A person may not coerce or intimidate any nonelective salaried employee into making a contribution. A person may not coerce or intimidate any nonsalaried employee of the state government or any of its subdivisions into engaging in any form of political activity. The provisions of this subsection may not be construed to prevent any employee from making a contribution or from engaging in political activity voluntarily without coercion, intimidation or solicitation.

While the email may have been improper, this Court has never held that every violation of this statute requires the automatic, mandatory removal of the offending official from office. To the contrary, we have held that "[t]he remedy for the removal from office of a public officer is a drastic remedy and the statutory provision prescribing the grounds for removal is given strict construction." Syl. Pt. 2, *Smith*. Based on the evidence before the Panel that the Secretary of State's Office opted not to pursue charges; that there were few objections to the email; and that Respondent Kawecki noted his mistake and apologized, we find no error in the Panel's characterization of the email violation as de minimis.

In their sixth assignment of error, petitioners argue that the Panel erred in failing to order the removal of respondents as a result of respondents' rejection of the Ward and Boundary Commission's planned adjustment to Wards Four and Seven, and respondents' submission of an alternate plan allegedly for the sole purpose of preserving Respondents Ganz's and Selin's seats on the Council. We reject petitioners' argument. First, Sections 7.05(e) and (f) of the City Charter authorize the Council to both (1) reject the Wards and Boundary Commission's proposed plan, and (2) propose its own plan for approval. That is what happened here, with the public's knowledge prior to the 2015 election, in which respondents had opposition from only write-in candidates. Second, both the State of West Virginia Ethics Commission and the Monongalia County Prosecuting Attorney reviewed relevant aspects of the situation and concluded that there was nothing unlawful or unethical about respondents' actions. Certainly, with this undisputed evidence before it, the Panel did not err in finding that respondents' actions in this regard did not warrant removal from office.

Petitioners' final assignment of error challenges the Panel's findings and conclusions that respondents did not violate Section 2.05 of the City Charter, which prohibits "interference with administration," and states as follows:

[T]he council or its members shall deal with City officers and employees who are subject to the direction and supervision of the City Manager solely through the Manager, and neither the Council nor its members shall give orders to any such officers or employees, either publicly or privately. Violation of this provision shall constitute grounds for removal from office.

The section further provides, in part, that the Council members are prohibited from individually influencing the official acts of any City employee and from interfering with any City employee's performance of his or duties.

8

The Panel noted that the terms "order" and "interference" were undefined in the City Charter. Therefore, in order to examine petitioners' allegations, the Panel looked to *Black's Law Dictionary*, which defined "order" to mean "command, direction, or instruction," and "interference" to mean "the act of meddling in another's affairs" or "an obstruction or hindrance." *Black's Law Dictionary* (10th ed. 2014). Petitioners argue that the Panel substituted its own definitions for these terms; however, given that the terms are undefined in the Charter, this Court is hard-pressed to find error in the Panel's reference to *Black's Law Dictionary*.

Armed with these definitions, the Panel reviewed the emails submitted at the hearing in the Joint Exhibit Notebook, heard testimony from the recipients of some of the emails and from other involved City officials, and concluded that, while certain respondents had communicated directly with City employees from time to time, those communications did not command, direct, or instruct the employee to act or not act. Additionally, the Panel was unconvinced that these emails, or any of the other conduct alleged in the removal petition constituted a meddling, hindrance, or obstruction with City operations. As for the allegation regarding a list of write-in candidates found at Respondent Selin's polling place, the Panel found that the police had investigated the matter and exonerated Respondent Selin of any wrongdoing. Accordingly, this Court finds no error in the Panel's conclusions that petitioners failed to establish that respondents "interfered with administration" in violation of the City Charter.

For the foregoing reasons, we affirm the "Order Denying Petition to Remove Pursuant to W.Va. Code § 6-6-7" entered by the Panel on June 10, 2016.

Affirmed.

**ISSUED:** January 27, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker